DYE v. BEAVER CREEK CHURCH.

1. WILL—CHARITABLE USES.—A testator devised all his property to his wife, "for her to dispose and live on during her life, and if there is anything at her deceast after left after her deceast and burial, I give and bequeath to the Beaver Creek Church for poor children, for their tuition." *Held*, the devise was not void for uncertainty in the subject-matter, nor as to the amount.

2. IBID.—IBID.—UNINCORPORATED SOCIETY.—An unincorporated society may take and hold a devise of real estate for charitable purposes; the individuals composing it taking as natural persons.

3. IBID.—IBID.—CHURCH.—A devise for tuition of poor children is *germane* to the purposes for which a Baptist church is formed.

4. IBID.—IBID.—UNINCORPORATED SOCIETY.—A devise to an unincorporated society, "for poor children, for their tuition," is not so vague, indefinite, and uncertain, as to the objects and beneficiaries of the use, that it is void. Rules for construing devises to charitable uses stated.

5. *Brennen* v. *Winkler*, 37 S. C., 457, distinguished from this.

Before GARY, J., Fairfield, June, 1896, affirmed.

Action by heirs at law of John Dye against Beaver Creek Church and its officers for possession of tract of land.

The Circuit decree is as follows:

John Dye, of Fairfield District, by his will, executed on the 14th day of December, 1854, devised as follows: "First of all, my lawful debts to be paid out of my estate, and all the balance of my personal and real estate I give and bequeath to my beloved wife, Tabitha Dye, for her to dispose and live on during her lifetime; and if there be anything at her deceast after left after her deceast and burial, I give and bequeath to the Beaver Creek Church for poor children, for their tuition. I hereby appoint my beloved wife, Tabitha Dye, and Nathaniel Davis, executors to this my last will and testament." The will was probated on the 12th day of January, 1855, and the wife of testator, the said Tabitha Dye, kept possession of and enjoyed the property devised in said will till her death, in the year 1890. The testator left no ancestors nor lineal descendants, but left surviving him six brothers and sisters, two of whom died unmarried, and the plaintiffs are the only surviving heirs at law of the said testator. The object of this suit is to have the land partitioned amongst the plaintiffs, and for judgment against the defendants for the sum of $100 as damages for withholding the possession from the plaintiffs. The plaintiffs contend that the limitation in said will is

void for three reasons, as follows: First, because there is no trustee, or trustees, named in said will, and the use not being clearly defined, must necessarily fall; second, because Beaver Creek Church, being an unincorporated society, cannot take, hold or acquire property by devise; and, third, because the devise is void for uncertainty. There is no dispute as to the facts of the case. The defendants are in possession of the land mentioned in said devise. If the limitation in said will is void, then the heirs at law are entitled to the partition. So there are only cold questions of law presented for determination, and, I am free to admit, have perplexed me no little. My opinion has not been settled, but has vacillated from plaintiffs to defendants. My first impression was, that the limitation was void for uncertainty and as being too indefinite. But upon a more careful consideration of the authorities, I am convinced that devises to *charitable uses* are not to be measured by the same rule of construction as similar devises for other purposes, and which would be void for vagueness or uncertainty. I suppose the reason is, that the object and effect of every charitable bequest is to confer a public benefit, else it would be no charity. It is a charity that moves from the individual to the masses, like a stream flowing to the sea. It is a return of a gift to the giver, for the labors of all contribute to the prosperity of each. It seems to me that the case of *Attorney General* v. *Jolly*, 1 Rich. Eq., 99, is directly in point, and is conclusive of all three of the grounds upon which it is sought to declare this devise void. It is true, the authorities are not uniform, by any means, upon this question, but, on the contrary, they differ very materially; so I prefer to rest my opinion upon the authorities of our own State. The devise in Jolly's case just cited was as follows: "I give, devise, and bequeath the whole of my estate, both real and personal, to my wife, Elizabeth Burnett, during the term of her natural life. After her death, I give, devise, and bequeath the whole of my said estate, both real and personal, to the Methodist Church of which she may be

a member at the time of her death, to be appropriated to the
uses and purposes which the conference may deem most
advantageous for said church; more especially for the sup-
port of Sunday schools, for the purchase of Bibles and reli-
gious tracts, and the distribution of the same among the
destitute, and for the support of missionaries." There the
devise was sustained by an undivided Court. Chancellor
Harper, in delivering the opinion of the Court of Errors,
says: "This is a case in which I take great pleasure in re-
versing my own judgment, and it is, perhaps, fortunate that
the decision has been delayed until the subject has under-
gone so thorough an investigation as it has done in the
cases of Sarah Tayne's will, determined in the Circuit
Court of the United States for Pennsylvania by Mr. Justice
Baldwin, and in that of *Vidal* v. *Girard's Executors*, in the
Supreme Court of the United States, 2 Howard, 127. The
extent of learning and laborious research with which those
cases were examined, would make it a matter of affectation
to go over the same ground and comment on the same
authorities." In discussing the point, that there was no
trustee named or appointed in the will, he says: "I under-
stand these principles to be settled by the decisions referred
to. If there be a bequest to a society, by that name, the
individuals composing it, who may be identified by evi-
dence, take as natural persons, in the same manner as if
each had been particularly named; and that if it be upon a
lawful trust, they will be compelled to execute it. There
was some difficulty in England, from the circumstance that
a gift of land, made in such terms, gave only a life estate,
for want of words of inheritance. But with us, where no
words of inheritance are necessary, I do not perceive why
a society by that name should not take the fee. I suppose
that such an estate would not come within our act of 1791,
providing for the distribution of intestates' estates, but that
the descent must be according to the common law. Justice
Baldwin observes that the incorporations were originally
established to enable religious societies, the individuals

composing which were regarded as men dead in law, and incapable of taking as natural persons, to take in succession. There was never need of a charter to enable societies to purchase chattels. It is decided that devises to *charitable uses* will be established and enforced when similar devises for other purposes would be void for vagueness or uncertainty. * * * In some of these cases the charities were not only of an uncertain and indefinite nature, but, as far as we can gather from the imperfect statements in the printed records, there were also cases where either no trustees were appointed or the trustees were not competent to take. They show very conclusively also that persons having only a general and indefinite interest, such as the complainants have as members of the religious society, may sustain the will and enforce the use." With reference to the point that there is no trustee named in the will, Chancellor Harper concludes: "It is the well known and universal rule of the Court, that if the object of the trust be lawful, and sufficiently specific and definite to enable the Court to execute it, it shall never fail for want of a trustee." As already stated, I think the plaintiffs are precluded by the reasoning in the above case, and they are, therefore, not entitled to the relief demanded in the complaint.

It is, for that reason, ordered, and adjudged, that the complaint of the plaintiffs be dismissed.

From this decree the plaintiffs appeal on the following exceptions:

I. For that his Honor erred in not holding and adjudging in this case that the devise to the Beaver Creek Church in the will of John Dye, deceased, was void for vagueness, remoteness, and uncertainty therein as to objects and beneficiaries.

II. For that his Honor erred in not holding and adjudging that, as no trustee was named in said will, the language therein contained was too indefinite, uncertain, and unspecific upon and from which the Court could declare the use

and trust, and enforce the same itself or through a trustee appointed for that purpose.

III. For that his Honor erred in not holding that the Court had no power to appoint a trustee in such cases, unless there was in the first instance a clear, definite, and specific use and trust declared, which was capable of being enforced by the Court, and that in the said will there was no such use or trust declared.

IV. For that his Honor erred in not holding and adjudging that the Beaver Creek Church, being an unincorporated society, was incapable of taking and holding real estate by devise, unless the same was devised to promote the uses, purposes, and objects of such society, and that the devise in said will to said church was not for such uses, purposes, and objects as those for which said church was organized.

V. For that his Honor erred in not holding and adjudging that said devise could not be sustained as a devise to charitable uses, because of uncertainty as to the amount of the property devised.

VI. For that his Honor erred in this case in holding and adjudging that the devise in said will to the Beaver Creek Church was sufficiently clear, definite, and certain to enable the Court to give it effect and enforce it as a devise to charitable uses.

VII. For that his Honor erred in holding and adjudging in this case that it was not necessary to the validity of the trust and devise to the Beaver Creek Church that a trustee should have been named and appointed in the will, and that the use and trust therein declared were sufficiently definite and certain to enable the Court to enforce it.

VIII. For that his Honor erred in holding and adjudging that the case of *Attorney General* v. *Jolly*, 1 Richardson's Equity Reports, page 99, was applicable to the facts of this case; that it was "conclusive of all three of the grounds upon which it is sought to declare this devise void;" and that the plaintiffs in this action are precluded by the reasoning of the Court in that case.

29—48

*Mr. J. E. McDonald*, for appellant, cites: *On first point:* 44 Am. Dec., 99. *On second:* 1 Rich. Eq., 99; 2 Strob. Eq., 395; 3 S. C., 509; 4 Ired. Eq., 26; 2 Ired. Eq., 210; 8 Md., 551; 33 Md., 609; 5 Harris & Johns., 392; 22 Conn., 31; 23 N. Y., 298; 3 Leigh., 450; 14 N. Y., 380; 26 N. E. R., 720; 28 N. E. R., 880; 28 N. Y. Sup., 625; 35 Ind., 198. *On third:* 4 Wheat., 27; 4 U. S., 330; 80 Am. Dec., 304; 67 Am. Dec., 162; 16 Am. Dec., 58; 9 Am. Dec., 577; 6 Conn., 293. *On fourth:* 35 Ind., 198; 68 Am. Dec., 162; 23 N. Y., 298. *On fifth:* 2 How., 127; 2 How., 193; 1 Rich. Eq., 109.

*Messrs. Ragsdale & Ragsdale*, contra, cite: *Generally:* 1 Rich. Eq., 99; 2 Strob. Eq., 329; 1 Rich. L., 175; 3 Rich. Eq., 160; 8 Rich. Eq., 190; 3 S. C., 502.

March 12, 1897. The opinion of the Court was delivered by

MR. JUSTICE GARY. The case contains the following statement of facts: This action was commenced on the 25th day of January, 1896, by the service of a summons, together with the complaint, on the defendants. The complaint sets forth the facts that the Beaver Creek Church was an unincorporated association, of the Baptist denomination; that the other defendants were, respectively, the deacons, and the clerk of said church or association; that one John Dye departed this life in December, 1854, leaving a last will and testament, wherein he devised a certain tract of land, situate in Fairfield County, to his wife for life, with remainder to Beaver Creek Church, for certain purposes; that the life tenant had died; that the limitations in the will, whereby the remainder was devised to Beaver Creek Church, were void for uncertainty and remoteness; that the plaintiffs are the heirs at law of the said John Dye, deceased, and that they are entitled to a partition of said tract of land, containing 127 acres; with the usual prayer for partition of the premises, or a sale of the same, if actual partition is impracticable.

The defendants, in their answers, admitted that they were

members of Beaver Creek Church, and that it was an unincorporated association, and they allege "that Beaver Creek Church is lawfully seized of the land, under the will of John Dye, deceased, and are charged with the trust therein set forth."

The cause came on for a hearing before Judge Ernest Gary, at the June, 1896, term of the Court for Fairfield County, upon the pleadings and the testimony taken by the referee. As the issues arise entirely upon the construction of the will of John Dye, deceased, it is deemed unnecessary to incorporate in the "Case" any of the pleadings, except the above synopsis. It is admitted by counsel that Tabitha Dye, the widow of testator, died in possession of the land mentioned in the complaint. Also, that the testator, John Dye, in his lifetime and at the time of his death, was a member of Beaver Creek Church, and that said church has now a membership of about 145 members; and that it is a church of the Baptist denomination, and that it is unincorporated. Also, that the defendants are in actual possession of the land in dispute, or rather that the Beaver Creek Church is in possession of the same. The following is a copy of the will of John Dye, deceased:

"In the name of God, Amen. I, John Dye, of the State and district aforesaid, being weak in body, but of perfect mind and memory, thanks be given to Almighty God, calling to mind and knowing it is once appointed for all men to die, do make and ordain this my last will and testament—that is to say: personally, and last of all, I give and recommend my soul to God, who gave it, and my body to the earth, from which it sprang, and my body to be buried decently in christian order by my executor or executrix hereinafter named. First of all, my lawful debts to be paid out of my estate, and all the balance of my personal and real estate I give and bequeath to my beloved wife, Tabitha Dye, for her to dispose and live on during her lifetime; and if there is anything at her deceast after left after her deceast and burial, I give and bequeath to the Beaver Creek Church

for poor children, for their tuition. I hereby appoint my beloved wife, Tabitha Dye, and Nathaniel Davis, executors of this my last will and testament. Given under my hand and seal, the 14th day of December, Anno Domini 1854. (Signed) John Dye." (Duly witnessed.)

The plaintiffs appealed from the decree of the Circuit Judge on exceptions, which, together with the said decree, will be set out in the report of the case.

The appellants' attorney, in his argument, urges the following objections against the validity of the devise: *First. That the devise is void for uncertainty in the subject matter, and as to the amount.* The words, "and all the balance of my personal and real estate, I give and bequeath to my beloved wife, Tabitha Dye, for her to dispose and life on during her lifetime, and if there is anything at her deceast after left after her deceast and burial, I give and bequeath to the Beaver Creek Church, for poor children, for their tuition," in effect, conferred upon Tabitha Dye a life estate, with power to dispose of said property during her lifetime (which she failed to do); but if she failed to dispose of said property during her lifetime, then it was to go to Beaver Creek Church. The case of *Sires* v. *Sires*, 43 S. C., 266, shows that the devise to the Beaver Creek Church would be valid, even if it had been made to an individual for his private benefit. For a stronger reason, then, the devise is valid, because it is for a charitable use, which is regarded as a benefit to the public. This objection cannot be sustained.

*Second.* Another objection urged by appellants' attorney is: *That Beaver Creek Church, being an unincorporated association, is incapable of taking and holding the land in the devise.* Whatever doubts may have existed after the case of *Attorney General* v. *Jolly*, 1 Rich. Eq., 99, as to the power of an unincorporated association to hold land for a charitable use, was dispelled by the case of *Bates* v. *Taylor*, 28 S. C., 476, in which this question squarely arose, and was necessarily decided. As this

is an important question, we will quote somewhat at length
from that case. The facts of the case are thus stated: It
appears that in September, 1847 * * * certain citizens of
that part of Richland County known as "The Fork" met
to devise means for the erection of an academy to educate
their children, in the neighborhood of Good Hope. Sub-
scriptions were raised to the amount of $2,525. Among
the subscribers was John Bates, who subscribed $500 in
cash, and thirty-seven acres of land. On December 2, 1847,
an association or society was formed, under the name and
style of the "Palmetto Society." Officers were elected, of
whom John Bates was one, and the "Palmetto Academy"
and "Teacher's Home" were built on said parcel of land.
On July 2, 1847, at a meeting of the society, a resolution
was adopted, authorizing an application for a charter, which
was afterwards obtained, to continue for fourteen years,
under the name of the "Palmetto Society in Columbia for
the dissemination of learning," and was accepted July 28,
1849. The parcel of land, known as the Palmetto Academy
lot (thirty-seven acres), was marked off by a blazed line, and
the buildings erected thereon have been used and held as
a school ever since. It seems that during the war, the reg-
ular meetings of the society or incorporation were not held,
but a school of some character was kept there all the while.
After the war, the premises were used for a time as a public
school, under the general laws, and in 1883 application was
made and the charter revised. John Bates, during his life-
time, never claimed the academy lot, but respected the lines.
He died soon after the war (December 25, 1866), and his
executors, in running his lands, left out the academy par-
cel, running around the old lines. His lands were sold by
order of the Court (1885), and purchased by the plaintiff,
and she now brings this action, alleging that the title to
the said lot had reverted to John Bates, in his lifetime, and
passed to her under the purchase aforesaid. "The Palmetto
Society," Jesse H. Taylor and C. W. Rawlinson, answered,
first, denying each and all of the allegations of the com-

plaint; and, second, alleging that neither the plaintiff nor
her ancestor or grantor was seized of the premises in ques-
tion within ten years before the commencement of the suit,
but that the defendants, and those under whom they claim,
have been in the adverse and exclusive possession for more
than ten years, &c. The jury rendered a verdict in favor
of the defendants. The plaintiff appealed to the Supreme
Court on exceptions, the third, fifth, and sixth of which are
as follows: "*III.* That his Honor erred in his charge: 'That
the defendant, "The Palmetto Society," could hold the land
in dispute as an unincorporated association, and that said
society did not hold said land as an incorporation.' *V.*
That his Honor erred in charging: 'That when the land in
dispute was given to the defendant, the Palmetto Society,
no charter was in contemplation, and said society took the
land not as a corporation, but as an unincorporated associa-
tion.' *VI.* That his Honor erred in charging: 'That the
land in dispute was given for a valuable consideration to
an unincorporated association, and that association being
afterwards incorporated, the land was held in abeyance
during the life of said corporation, and at the death of said
corporation, the land herein did not revert to the grantor,
John Bates, but reverted to the unincorporated association.' "
In considering the exceptions, the Court said: "The excep-
tions, in different form, complain that the Judge committed
error in charging that, as matter of fact, the contribution
of the land was made to an unincorporated society for a
public purpose, without reference to the charter which that
society afterwards obtained, and was allowed to expire,
amidst the confusion of the war (1862), and proceeding on
this assumption, he committed further error of law, in hold-
ing that the subscription was for a valuable consideration,
and that the unincorporated society could accept and hold
the land either individually or as a body, without a charter,
so as to divest the donor, John Bates, of the title to the
same." In concluding the opinion, the Court quoted with
approval the following language of Ch. Harper in *Attorney*

*General* v. *Jolly, supra,* to wit: "But the whole subject was considered (Vidal *v.* Girard's Executors), and the opinion of the Court was plainly intended to overrule the case of the Baptist Association *v.* Harts' Executors, 4 Wheat. * * * I understand these principles to be settled by the decisions referred to. If there be a bequest to a society by that name, the individuals composing it, who may be identified by evidence, take as natural persons in the same manner as if each had been particularly named, and that if it be upon a lawful trust, they will be compelled to execute it," &c. The exceptions were overruled and the judgment affirmed. The second objection cannot be sustained.

*Third.* Another objection urged is: *That the object of the devise is not germane to the purposes for which the association was organized.* The case of *Attorney General* v. *Jolly* shows that when a devise is made to an unincorporated association, for a charitable use, the members thereof take as natural persons, and not as an association. That case further shows that even if a devise is incompatible with the purposes for which an association was organized, the devise would not be void, but the Court would appoint another trustee. Also, that there is no objection to a *corporation* holding property, not strictly within the scope of the purposes of its institution, but collateral to them. There would seem to be less ground for this objection when the devise is, in effect, to members of an unincorporated association, who hold as natural persons. There, however, is doubt whether a devise for tuition of poor children may not be regarded as germane to the purposes for which a church is organized. The syllabus of the case of *Hanson* v. *Little Sisters of the Poor* (Md.), 32 L. A. R., 293, is as follows: "A trust for the maintenance of a parish school is germane to the object for which a Protestant Episcopal church is incorporated." The Court sees no force, therefore, in this objection.

*Fourth.* Another objection urged against the validity of the devise is: *That it is so vague, indefinite, and uncertain, as to*

*the objects and beneficiaries of the use, that it is void.*

It will be observed that the devise is for *poor children,* and its object is their *education.* The beneficiaries are a definite *class,* and the object of the devise is beyond question *charitable* in its nature. Chan. Harper, in *Attorney General* v. *Jolly,* mentions three kinds of charitable uses, the second of which is as follows: "Another instance is *where trustees are appointed,* but the objects are so vague and indefinite, that if the gift were to any other purpose than charity, the Court must declare the trust void for uncertainty, as in the instance of *Morice* v. *The Bishop of Durham,* 9 Ves., 399, where the trust was for such objects of *benevolence* and *liberality* as the Bishop of Durham should approve. To a bill for setting up a charitable use of this sort, I think the attorney general ought to be made a party to aid the Court *in devising the specific scheme for carrying it out*" (italics ours). In the case of *Attorney General* v. *Jolly* the devise was as follows: "I give, devise, and bequeath the whole of my estate, both real and personal, to my wife, Elizabeth Burnett, during the term of her natural life. After her death, I give, devise, and bequeath the whole of my said estate, both real and personal, to the Methodist church of which she may be a member at the time of her death, to be appropriated to the uses and purposes which the conference may deem most advantageous for said church; more especially for the support of Sunday schools, for the purchase of Bibles and religious tracts and the distribution of the same among the destitute, and for the support of missionaries." This devise was held to be valid. In the case of *Heiskell* v. *Chickasaw Lodge* (Tenn.), 4 L. R. A., 689, the Court says: "In *State* v. *Smith,* 16 Lea, 664, where the devise was to trustees to establish 'a college of learning,' the trust was not only sustained, but the Court undertook to supervise the location and plans of building and the scheme for the conduct of the college. The following principles are settled in Tennessee: *First,* that trusts for charitable uses should be favored by courts of equity;

*second*, that where the object of the charity is definite and it is to be administered by trustees, it will be sustained; *third*, that although the objects may be too indefinite for a court of chancery to undertake to administer it, yet, if a trustee capable of taking the trust be named, and clothed with the necessary powers and discretion for carrying out the charity, it will be upheld." See, also, *Johnson* v. *Johnson* (Tenn.), 22 L. R. A., 179; Hill on Trustees, *467; Perry on Trusts, sections 710, 713, 719, 720, 721, 722, and 731; *Russell* v. *Allen*, 107 U. S., 163. In the last mentioned case, the earlier decisions are reviewed, in an able opinion, by Mr. Justice Gray. We shall not attempt to review the many and conflicting authorities bearing upon the question under consideration, but state the following principles deducible from them: *First*. If a trustee is appointed by the testator, and the will shows that the object of the devise, though expressed in general terms, is for a charitable use, the trust will be declared valid. In such a case, the duty devolves upon the trustee of devising a scheme for carrying the trust into effect. *Second*. If a trustee is not appointed by the testator, and the will does not declare the manner in which the devise is to be made effectual, equity will not administer the trust. The reason a trustee is allowed to enforce a trust, the object of which is only expressed in general terms, is that in exercising his discretion he carries out the *intention of the testator*. But when there is no trustee appointed to exercise this discretion in devising a scheme for the execution of the trust, the court of equity can look alone to the will, and if it does not show the intention of the testator, parol testimony is inadmissible, and the trust must fail.

This case is different from the case of *Brennan* v. *Winkler*, 37 S. C., 457, in two important particulars: 1. The words which it was contended created a trust in that case were merely precatory; and, 2. There was no trustee appointed by the testatrix, and as the will did not disclose the manner in which the trust was to be

administered by the Court, it was declared a nullity. By observing this distinction is the only way in which the cases of *Attorney General* v. *Jolly, supra,* and *Brennan* v. *Winkler,* can be harmonized. The Court did not intend to shake the authority of *Attorney General* v. *Jolly,* in *Brennan* v. *Winkler;* otherwise it would have said so. Furthermore, the Justice who delivered the opinion of the Court, in *Brennan* v. *Winkler,* wrote the opinion, also, in *Bates* v. *Taylor, supra,* where he quoted from *Attorney General* v. *Jolly,* with approval.

After a long and patient investigation of the authorities upon this question, we have reached the firm conclusion that the judgment of the Circuit Court should be affirmed, and it is so ordered.

Judgment affirmed.