14653

SCHULTZ v. BARR *ET AL.*

(196 S. E., 177)

August, 1937.

*Messrs. Clarke W. McCants* and *Blackwell & Smith,* for appellant,

[redacted]

*Messrs. Butler B. Hare* and *B. W. Crouch,* for respond-ent,

April 1, 1938.

The opinion of the Court was delivered by Mr. Justice Fishburne.

This action involves a construction of the will of W. J. P. Kinard, late of the County of Lexington, who died testate on or about March 1, 1919. The controversy has to do with the nature and extent of the interest and estate which the testator devised to his wife, Mattie J. Kinard, who survived him. The respondent contends that the widow received a life estate only. The appellant contends that if under the will she did not take an estate in fee, she took a life interest, with full power of disposal during her lifetime, and that she executed this power.

The particular provisions of the will which are in question are found in the third paragraph, but as we think the second paragraph also has a bearing upon the issue, we quote both:

"Second: I hereby will, devise and bequeath to Florence Wertz, Ina Wertz, Lester Wertz, and James Luther Wertz, my interest in my Trotter Place in Saluda County, said State, containing One Hundred Sixty Acres (boundaries given), and also the one-half acre and house in Leesville (boundaries given). Reserving, however, unto my wife, Mattie J. Kinard, a life interest, title and right in said land,

or so long as she may remain a widow after my death. After the death of my wife, said bequest to take effect or at the time of her remarriage after my death said bequest to take full effect, and said premises to go to the parties named.

"Third: I hereby will, give, devise and bequeath the balance of my property of every kind, both real and personal, to my wife at her disposal, so long as she may remain a widow, and so long as she may live, but should she marry, then this property shall go as hereinafter provided. At the death or marriage of my wife the property of mine not used or disposed of by her shall go to Kathleen Miller, except the property named hereinabove in second clause of this will. Provided, Kathleen Miller is living at the marriage or death of my wife. But in the event she, Kathleen Miller, should predecease my wife, then, and it is my will that all the property remaining of mine not used or disposed of by my wife, shall go to Florence Wertz, Ina Wertz, Lester Wertz, and James Luther Wertz. But should Kathleen Miller leave a child or children then such child or children shall inherit the property herein given to her, such child or children taking the part given to her the same as if she were living."

The action was brought by Kathleen Schultz, née Miller, in 1935, who claims that she is entitled to 169 acres, composed of two tracts, and an undivided two-thirds interest in a tract containing 1½ acres, which passed to her as remainderman in fee under the third paragraph of the will. The plaintiff was the foster daughter of W. J. P. Kinard and Mattie J. Kinard. During the pendency of the proceedings in this cause, Mattie J. Kinard died, without having remarried.

It is alleged in the complaint that Mattie J. Kinard, by an instrument purporting to be a deed, bearing date November 23, 1928, which was duly recorded, attempted to convey to Matthews & Bouknight Company the lands in question, in which it is contended that she owned only a life estate. The plaintiff prays for a decree adjudging that, upon the death or remarriage of Mattie J. Kinard, the plaintiff, if living at

that time, would be entitled to the remainder in fee to the lands referred to; that Mattie J. Kinard did not have the power to dispose of or alienate the said lands; and that the deed to Matthews & Bouknight Company canceled.

The defendant, McKendree Barr, as Receiver of Matthews & Bouknight Company, set up, among other things, that the deed executed and delivered to them was based upon a good and valuable consideration, and that Mattie J. Kinard had the power and authority under the will of her deceased husband to execute the same and convey title in fee simple. By way of further defense it was alleged that Matthews & Bouknight Company furnished Mattie J. Kinard, subsequent to the death of testator, with various supplies and commodities necessary for her support and maintenance, and that if it be determined that the instrument in question, in form a deed, was in fact intended as security for her indebtedness, that said instrument be declared to be in legal effect a mortgage, and that it be held to constitute a lien upon the premises in question.

The cause was referred to a Special Referee, who made his report, upholding the validity of the instrument executed and delivered to Matthews & Bouknight Company (which was also attacked on grounds other than the lack of power or authority of Mattie J. Kinard to execute same, such other grounds not now being before this Court), but finding that it was intended as a mortgage and not a deed conveying the fee. He likewise concluded that Mattie J. Kinard took only a life estate under the will of her deceased husband, and that upon her death the active energy of the mortgage ceased, and that it no longer constituted a lien upon the premises therein described; and, further, that upon the death of Mattie J. Kinard, the lands in question vested in the plaintiff in fee. He also found that the amount due on the mortgage was $2,305.00.

Upon exceptions to the Circuit Court, the appellant challenged the correctness of the Referee's legal conclusions. When the matter was heard on circuit, these exceptions were

overruled and the report of the Special Referee was adopted as the judgment of the Court. The respondent did not except to the report of the Special Referee, and has filed no exceptions to the circuit decree

The appellant has accepted and acquiesced in the holding of the lower Court that the deed in question is in fact a mortgage, and that the amount due thereon is $2,305.00, but raises the issue in his appeal to this Court, that Mattie J. Kinard was fully empowered under the will to execute such mortgage, and that the lien thereof on the premises described is in full force and effect, and was not terminated by her death. This brings us to the construction of the will.

The purpose in construing a will is to ascertain and give effect to the intention of the testator, so long as the same may not interfere with the established rules of law. This purpose is to be ascertained upon a consideration of the will in its entirety, and words and expressions in the will are to be liberally construed and interpreted to this end. The meaning which the testator intended to convey, by the use of particular words and expressions, will be determined from their relationship to other words and expressions used, and, when his intention is discovered, it will be enforced, notwithstanding that a meaning broader or narrower than is usual be given to particular words and phrases.

From a careful examination of this will, we are of the opinion that it does not expressly or in direct terms authorize or empower the life tenant, Mattie J. Kinard, to dispose of the fee in the real estate under Paragraph 3, but we think it clear that such power was given to her by necessary implication. In the first clause of Paragraph 3 the testator devises and bequeaths the balance of his property "of every kind, both real and personal, to my wife at her disposal during her life or widowhood."

In the second clause of the third paragraph it is provided that at the death or remarriage of the widow, "the property of mine not used or disposed of by her shall go to Kathleen Miller (now Schultz), except the property named herein-

above in Second Clause (paragraph), of this will." It is then provided in the third clause of this paragraph that in the event Kathleen Miller should predecease the widow, then, "It is my will that all the property remaining of mine not used or disposed of by my wife, shall go to Florence Wertz, Ina Wertz, Lester Wertz, and James Luther Wertz."

What did the testator intend or mean by the phrases "at her disposal," "Property of mine not used or disposed of by her," "all the property remaining of mine not used or disposed of by my wife," which we find in the third paragraph of the will?

It is not consonant with reason to say that he intended that his widow should have the right only to the use, occupancy, and possession of the real estate or the income therefrom, for such right is incident to a life estate, and no words added to the devise of a life estate are necessary to bestow such right.

If the expressions above quoted had been left out of the will, it would in no way have affected her right to convey, by deed or mortgage, her life interest in the real estate. Therefore, to say that her right of disposal is limited to a life interest would be not only to ignore, but to nullify, the power of disposition plainly implied by the language used. To confine the power of disposal to a life estate would do violence to the rule of construction that every word used by the testator should be given force. Furthermore, it is too obvious to be overlooked, that the testator anticipated that his wife might find it necessary to do what she did. In fact, in the deed given by her to Matthews & Bouknight Company (now conceded to be a mortgage), she recites: "I have used the land up in my support, maintenance, and said lands have been used and disposed of as is permitted by the said will." She survived the testator seventeen years. It is plainly evident from the words he used that he wished to protect her from the unknown hazards of the future, and that this was his dominant purpose. We find this purpose unmistakably evidenced three times in this paragraph.

Neither is it reasonable to conclude, as contended by the respondent, that these phrases pertain only to personal property. The will under discussion disposes of both the real and the personal property in identical language, in the same connection, and the estates created are the same. If there is power of disposition as to one, there is power of disposition as to the other. All of the testator's remaining property is unequivocally placed in the same category.

The conclusion reached by us finds approval and confirmation in decisions from Courts of various jurisdictions in this country. For a very comprehensive note on the subject, see 108 A. L. R., 542, following the report of *Hutchinson et al., Adm'rs, etc., v. Arnt, Admrx., etc.,* Ind. Sup., 1 N. E., 2d, 585; 4 N. E., 2d, 202.

In *Clark v. Middlesworth,* 1882, 82 Ind., 240, the power to sell real estate was held to be clearly implied in a devise of the same to the testator's wife for life, and "at her death, should anything remain," the same to be divided among his heirs-at-law; the Court saying that the quoted words would be senseless and without meaning unless the testator intended that the tenant for life might, prior to her death, dispose of the property devised to her for life.

In *Young v. Hillier,* 1907, 103 Me., 17, 67 A., 571, 125 Am. St. Rep., 283, in which the will devised all of the testator's estate, both real and personal, for the use of his wife during her life, with a gift over of "whatever may remain of said estates," at the death of his wife, it was held that a power to sell was created for both the real and the personal property, which, when exercised, divested the title of the remaindermen.

In *Burford v. Aldridge,* 165 Mo., 419, 63 S. W., 109, 65 S. W., 720, under a will giving the testator's residuary estate to his wife "to use and manage as she may deem best, as long as she may live," with a gift over at her death of that "which may be left of the estate," it was held that the widow was entitled to consume as much of the estate as was desired; the body as well as the product.

In the case of *Paxton v. Paxton,* 141 Iowa, 96, 119 N. W., 284, 285, the language of the will was: "I give, devise and bequeath unto my beloved wife, Frances Elizabeth Paxton, all my property real and personal of any name or nature, to be by her used and enjoyed as she may choose during her natural life and at her death if any property is remaining to be divided equally among my children."

The Court construed this provision as follows: "The language of this will does not expressly confer upon plaintiff the power to dispose of the real estate, but it does indicate that such real estate may be disposed of during her lifetime, and that only such portion as may remain undisposed of at her death is to pass to the defendants. The necessary implication from the language used is that the real estate, or any portion thereof, may be sold, and the title thereto conveyed in such way as to cut off any interest of the defendants in the property."

In the case of *Dye v. Beaver Creek Church,* 48 S. C., 444, 26 S. E., 717, 720, 59 Am. St. Rep., 724, the specific question passed upon, among others, was whether the devise was void for uncertainty. The Court, in discussing the question, used language directly applicable here, which might be construed as *obiter dicta,* but which is in accord with our present conclusion. It was there said: "The words, 'and all the balance of my personal and real estate, I give and bequeath to my beloved wife, Tabitha Dye, for her to dispose and live on during her lifetime, and if there be anything (at her deceast after) left after her deceast and burial, I give and bequeath to the Beaver Creek Church, for poor children, for their tuition,' in effect, conferred upon Tabitha Dye a life estate, with power to dispose of said property during her lifetime, which she failed to do; but, if she failed to dispose of said property during her lifetime, then it was to go to Beaver Creek Church."

The holding in the case of *Ford v. Ticknor,* 169 Mass., 276, 47 N. E., 877, which is cited in support of the decree of the lower Court, we think has been misapprehended. In

that case the devise was to the testator's wife to hold during her life, with full power to use and dispose of the property as she should deem right and proper, with remainder over, and the question was whether the widow had the right to dispose of the property by will. The point that the language of the will created a fee was raised by counsel, and the contrary position was necessarily taken by the Court, which held that the widow could dispose of the property only during her lifetime. The Court said that the dominant purpose was to give the wife a life estate with a remainder over, and that the power of disposal was merely incidental to the life estate to make it fully effectual, so that, if she deemed best, her use of it during her life might exhaust the full value of the property. The power was regarded as one to be exercised only during the active enjoyment of the life estate and in aid of its enjoyment.

By reference to the second paragraph of the will, which we have hereinbefore quoted, it will be noted that in devising the real estate therein referred to, the testator, in reserving unto his wife, Mattie J. Kinard, a life interest therein during her life or widowhood, did not employ any of the phrases which we find in the third paragraph.

It is apparent that in the second paragraph he intended her to have and possess only the rights incident to a life estate, without any power to dispose of or convey.

The language of this second paragraph throws much light, by way of comparison, upon the provisions of the third paragraph, in which the testator, by the clearest implication, conferred the power upon his wife to dispose of the property therein devised to her.

In our opinion, the life tenant, Mattie J. Kinard, possessed the power to dispose of and convey the property by deed or mortgage. It necessarily follows that the mortgage given by her to Matthews & Bouknight Company is a valid and subsisting lien on the real estate described therein, and is of full force and effect to secure the sum of $2,305.00; and we hold that Mattie J. Kinard being now dead, the plaintiff,

Kathleen Schultz, née Miller, is vested with the remainder in fee to the property covered by the mortgage, subject to the lien of the said mortgage.

Reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.