## COLBERT *v.* SPEER.

## MOSHER *v.* WHITNEY.

## SPEER *v.* WHITNEY.

WILLS; LEGACIES; MISNOMER; DEVISES AND BEQUESTS FOR RELIGIOUS PURPOSES; UNCERTAIN DEVISES AND BEQUESTS; TRUSTS AND TRUSTEES.

1. Where there is a devise or bequest to "Georgetown University," and there is no institution bearing that name, but evidence *aliunde* shows that an institution the corporate title of which is "The President and Directors of Georgetown College" was the one intended by the testator, such misnomer or misdescription is not of such a character as to defeat the devise or bequest,—especially where, by the terms of the act of Congress incorporating such institution, it is declared that no misnomer of the corporation shall defeat or annul any bequest or devise made to it.

2. Bequests to St. Vincent's and St. Joseph's Catholic Orphan Asylums are good, although the correct corporate names of these institutions are "St. Vincent's Orphan Asylum" and "The Trustees of St. Joseph's Male Orphan Asylum" respectively.

3. The corporation incorporated under the act of Congress of June 10th, 1844 (6 Stat. at L. 912, chap. 41), as "The President and Directors of Georgetown College" is not a religious institution within the meaning of § 457, D. C. Rev. Stat. and § 34 of the Maryland Declaration of Rights, prohibiting gifts and devises for religious purposes unless made at least one month before the death of the donor or testator, as the act of incorporation of the college does not limit the exercise of the corporate powers conferred to the promotion of any religious creed or denomination but the college is open to all alike; and the same is true with respect to St. Vincent's Orphan Asylum and The Trustees of St Joseph's Male Orphan Asylum, incorporated under the laws of this District.

4. A bequest to trustees to pay and see to the application of a definite sum of money to Georgetown College, to be used and held as an endowment for the prosecution of research in colonial history of Maryland and the District of Columbia and the gathering and preservation of archives and papers having relation thereto, is not void on the ground that there is no power in the charter of such institution authorizing

it to prosecute such research. The power conferred upon it by its act of incorporation, for the instruction of youths in the liberal arts and sciences, makes such a bequest germane to the object and purposes of the corporation, even though it is not within the letter of the charter of the college.

5. Nor is such a bequest void for want of certainty or definiteness in the nature of the research directed or its object, or because there is no charitable utility to be derived from its execution, or because of any uncertainty in the manner of the execution of the trust.

6. A bequest of a sum of money not to exceed $5,000, to be expended under the personal supervision of trustees appointed by the testator, in the purchase and erection of a chime of bells, an altar, or a memorial window, etc., for some one Catholic church in the District of Columbia, to be designated by the testator's mother by her will or otherwise, and, if she fails so to do, directing the trustees to carry out said trust as a memorial to the testator's mother, and donate the same to some Catholic church, giving preference if there be one built by the Jesuits, is void for uncertainty.

7. But where the testator, in making such a bequest, directs that, if it be void, said sum, not exceeding $5,000, shall be equally divided between certain orphan asylums, such alternative bequest is good, and the words "not exceeding" will not be construed as qualifying or limiting the sum bequeathed and directed to be equally divided. Under such circumstances each legatee will be paid one half of $5,000.

8. A bequest to trustees to pay and see to the application of "a sufficient sum not to exceed $3,000, the income to be applied to maintain a scholarship in the study of medicine, preferably in Georgetown University, otherwise in some medical college in the District," is not void for uncertainty, but may be executed under the direction of the court.

9. A bequest to trustees to pay and see to the application of $5,000 "to be applied as I [the testator] may hereafter verbally indicate to my trustees, or, if I fail, as my trustees, with the advice of proper persons, may decide, to the maintenance of a scientific department, or the foundation and application of the income to a scholarship in the classical department of the University of Georgetown," is void for uncertainty, where there was no such verbal direction. It would be impossible for the court to determine who would· be proper persons to advise the trustees.

Nos. 1368, 1369, and 1370. Submitted May 25, 1904. Decided October 12, 1904.

HEARING on several separate appeals from decrees of the

Supreme Court of the District of Columbia in suits in equity
for the construction of will.                    *Reversed.*

The COURT in the opinion stated the case as follows:

The bill in this case was filed for the purpose of obtaining
a judicial construction of the last will and testament of the late
Ethelbert Carroll Morgan, deceased. The will was executed on
the 22d day of April, 1891, and the testator died on the 5th
day of May, 1891, thirteen days after the making of the will.
By the will William J. Stephenson and John H. Magruder were
appointed executors, and to whom, upon the admission of the
will to probate, letters testamentary upon the estate of the de-
ceased were duly granted. The testator left a considerable
estate, both real and personal. He was never married, and he
left as next of kin and heirs at law two brothers and three sisters,
namely, James D. Morgan, Cecil Morgan, Eleanora D. Speer,
Anna M. Mosher, and Ada M. Hill. All his estate appears to
have been disposed of, according to the terms of his will. Some
time after obtaining letters of administration upon the estate,
William J. Stephenson died, leaving John H. Magruder the sur-
viving executor, who proceeded with the administration of the
estate.

The estate consisted of two parts,— the first being that which
the testator had accumulated himself, and the second part being
that which he derived under his father's will. His father,
James E. Morgan of this District, died in June, 1889, testate,
and leaving a considerable estate; and upon the settlement of
which the share thereof to which his son, Ethelbert Carroll Mor-
gan, was found to be entitled, under the will, amounted to near
about $55,000. That part of the testator's estate accumulated by
himself, independent of the part derived under his father's will,
amounted to a sum near about $24,000; the two parts of the
estate of the testator so derived amounting together to about or
a little over $78,000. These sums were paid into the hands
of Magruder, the surviving executor and trustee; and upon the
resignation of Magruder as such surviving executor and trustee

the funds and property in his hands were turned over to the hands and control of Michael J. Colbert and James Mosher, who had been duly appointed substituted trustees under the will of said Ethelbert Carroll Morgan, deceased.

It was in this condition of the estate that the present bill was filed, on the 5th day of March, 1901, by Eleanora D. Speer, in her own behalf, and by Emory Speer, her husband and next friend, against the substituted trustees under the will of Ethelbert C. Morgan, deceased; James Mosher and Anna M. Mosher, his wife; St. Vincent's Orphan Asylum, the trustees of St. Joseph's Male Orphan Asylum, and certain persons charged in the bill as representing themselves to be the president and directors of Georgetown College, claiming in behalf of the college certain bequests in the will.

It is alleged in the bill that the testator, by his will, after giving and bequeathing certain specific and pecuniary legacies, in regard to which there is no question raised, made the following disposition of a certain part of his estate: "All the rest and residue of my estate, real, personal, and mixed, of which I am now possessed or shall possess at my death (other than my share under my father's will, of which I would become possessed at my mother's death), I give, bequeath, and devise to my trustees hereafter named, and their heirs and assigns, with full power to sell, convey, mortgage, and reinvest; in trust, nevertheless, to apply the income and profits to the use and benefit of my sisters Eleanora Speer, wife of Emory Speer, and Minnie Mosher, wife of James Mosher, in equal parts during their lives, and at their death to deliver and convey each sister's share to her issue, and if either sister die without issue living at her death, to deliver and convey said part to the survivor of her issue, if any surviving her.

"And if my said two sisters shall both die leaving no issue living at their death, I direct my said trustees to deliver and convey all the said rest and remainder of my estate (excepting my share aforesaid under my father's will) to Georgetown University, in the District of Columbia, to be an endowment in equal shares of the literary and medical department thereof."

Then, after giving directions and making disposition as to his surgical instruments, his medical books, furniture in his office, and the rooms which had been occupied by him as an office, and also some articles in the possession of his mother, the testator proceeds to dispose of that part of his estate which he acquired under the will of his father, and to that end he incorporated the following devises and bequests in his will:—

"And I hereby give, bequeath, and devise any and all the estate, real, personal, and mixed, devised to me under my father's will, and to which I become entitled to have and possess upon my mother's death, to my trustees hereinafter named, their heirs and assigns forever, with full power to sell, convey, mortgage, encumber, and reinvest, in trust, nevertheless, to pay and see to the application of —

"First, the sum of ten thousand ($10,000) dollars to Georgetown University, in the District of Columbia, to be used and held as an endowment for the prosecution of research in the colonial history of Maryland, and the territory now embraced in the District of Columbia, and obtaining and preserving archives and papers having relation thereto, and known as the James Ethelbert Morgan fund.

"Second, a sum not to exceed five thousand ($5,000) dollars to be applied and expended under the personal supervision of my trustees to the purchase and erection of a chime of bells and either a side altar or memorial window or a bell and either a side altar or a memorial window for some one Catholic church, * * * said church to be in the District, and to—designated by my mother, by her last will or otherwise, and, if she fails so to do, I direct my trustees to carry out this trust as a memorial of my mother, Nora Morgan; and donate the same to some Catholic church, * * * giving a preference, if there be one built by the Jesuits. And in event this clause and gift be void, I direct said sum not exceeding ($5,000) five thousand dollars, shall be equally divided between 'St. Vincent's and St. Joseph's Catholic Orphan Asylums,' in the city of Washington.

"Third, a sufficient sum not to exceed three thousand ($3,000) dollars, the income to be applied to maintain a scholarship, in

the study of medicine, preferably in Georgetown University; otherwise in some medical college in the District, to be known as the E. Carroll Morgan scholarship.

"Fourth, the sum of five thousand ($5,000) dollars to form a fund known as the E. Carroll Morgan fund or scholarship, to be applied as I may hereafter verbally indicate to my trustees, or, if I fail, as my trustees, with the advice of proper persons, may decide to the maintenance of a scientific department, or the foundation and the application of the income to a scholarship in the classical department in the University of Georgetown, in the District of Columbia. That the qualifications under both or either of the two last clauses of this will shall be that the applicant be born in the District of Columbia, and at the time or within a year a student in a Catholic or a public school of the District of Columbia, and most excellent in a competitive examination conducted by the faculty of the University of Georgetown.

"And lastly, as to all the rest and residue of my aforesaid share of my father's estate, my said trustees, their heirs and assigns, shall hold the same for the benefit of my aforesaid sisters Eleanora and Minnie, upon the same limitations, conditions, remainders, and powers, and in the same manner, as the trustees under my father's will, will then hold, retain, and possess the 'remainder' and bulk of the respective shares of my said sisters. I wish my brother Cecil to have my share of my father's library. I nominate and appoint William J. Stephenson and John H. Magruder my executors and trustees of this my last will and testament."

The contention upon which the bill is founded is that certain of the bequests contained in the will are void, and several grounds are assigned in support of the contention alleged in the bill. The first devise and bequest alleged to be void is that given by way of executory devise or bequest to Georgetown University, upon the death of the two sisters without issue living at the time of their death. The grounds alleged against the validity of this devise or bequest are several. First, it is alleged and contended that there is no such incorporated institution, in

the District of Columbia, capable of taking the bequest and devise, as the Georgetown University; and even upon the assumption that there is a mere misnomer, and that, instead of Georgetown University, the testator had in mind and intended the subjects of the devise and bequest to go to the president and directors of Georgetown College, still, this latter institution is alleged to be incapable of taking the devise and bequest because it is under the supervision and control of the Order of Jesuits, and is therefore a sectarian institution.    It is also alleged that, because of the misnomer or misdescription of the institution, the devise and bequest over are void.

The next bequest assailed as void is that of $10,000 to Georgetown University, to be held and used as an endowment for the prosecution of researches in the colonial history of Maryland and the District of Columbia.    The grounds urged for the impeachment of the validity of this bequest are the same as those urged against the validity of the preceding devise and bequest, with the additional ground that, upon the assumption that Georgetown College is the institution intended to take, there is no chartered power or authority in that institution to receive the bequest and to direct the prosecution of any such research into colonial history as that described; and therefore the bequest is void.

Then the bequest of $5,000 to be expended under the personal supervision of the trustees, in the purchase of a chime of bells, the erection of a side altar, and a memorial window, for some Catholic church, to be designated by his mother, is challenged as void for uncertainty, and because of the death of one and the resignation of the other of the trustees; and because of the death of the mother without designating the church to receive the memorials intended to be erected.    And the alternative bequest of this $5,000 for the benefit of the two orphan asylums is also assailed as void, upon the ground that those institutions are under the charge and control of persons belonging to religious orders, and therefore incapable of taking the bequest under the facts of the case; and upon the further ground that the amount of the bequest is uncertain.

The two remaining bequests, the one of $3,000 and the other of $5,000, for the purpose of founding and maintaining scholarships, are also assailed as being void, because of their uncertainty and want of clearly defined conditions under which the funds should be applied.

It is charged in the bill that there is no such corporation in the District of Columbia as Georgetown University, or University of Georgetown, and therefore the bequests made to such institution are void and without effect, because of the want of a competent body to take such bequests for the uses and purposes mentioned in the will; and that the bequests made to and for the benefit of Georgetown University necessarily fail, and the funds intended to be applied under such bequests fall into and constitute a part of the residuum of the estate of the testator, and pass under the residuary clause of the will.

The defendants answered the bill, and none of them conceded the claims and contentions set forth therein. Colbert, one of the substituted trustees, John D. Whitney and others, for and on behalf the president and directors of Georgetown College, the trustees of St. Joseph's Male Orphan Asylum, and St. Vincent's Orphan Asylum, all controvert the claims and contentions set forth in the bill of complaint, and insist upon the validity of the various bequests in their behalf. The answer of Mosher, the other substituted trustee, simply expresses his willingness that the provisions of the will of the testator shall be given effect and carried out, so far as the same are, or is, or may be, legal or valid, or capable of being carried out and given effect to at law or in equity.

There was proof taken, and especially in regard to the name and corporate status of Georgetown College, claiming the devises and bequests made to and in behalf of Georgetown University.

The case was brought to hearing in the court below, and the learned justice who heard the case, upon very elaborate and learned examination of the various questions raised, held and decreed that the devise and bequest to the trustees named, of the testator's estate, exclusive of that which came to him under the will of his father, were valid and effectual, and that the devise

and bequest over, upon the death of the two sisters without issue living at the time of their death, to the president and directors of Georgetown College, in the District of Columbia, by the misnomer or mistaken name of Georgetown University, are valid to pass said estate to said Georgetown College, for the uses and purposes mentioned in the will. And it was also held and decreed that the clauses and subclauses in said will of the testator, designated in the bill of complaint and in the opinion of the court, as clauses c, d, e, f, g, and h, all of which relate to the estate acquired by the testator under his father's will, are, and each of them is, void and of no effect, and that the bequests attempted to be made by said clauses and subclauses so designated, or to which said subclauses are applicable, have lapsed and become inoperative; and further, that all of said void and lapsed legacies, being bequests of money, have fallen into the residuum of the estate of the said testator Ethelbert Carroll Morgan, and become part of said residue, and have vested in the beneficiaries entitled to take under said residuary clause of the will. The substituted trustees are decreed to account for all the estate in their hands, in accordance with the terms of the decree.

It is from this decree that the present cross appeals have been taken. The first of these appeals is by Colbert, one of the substituted trustees, Whitney and others, as the president and directors of Georgetown College, St. Vincent's Orphan Asylum, and the trustees of St. Joseph's Male Orphan Asylum: the second appeal is by James Mosher, the other of the substituted trustees, and Anna M. Mosher, his wife: and the third appeal is by Mrs. Eleanora D. Speer.

*Mr. George E. Hamilton* and *Mr. M. J. Colbert* for the appellants Colbert, Trustee, Whitney, and others.

*Mr. Conway Robinson* for the appellants James and Anna M. Mosher.

*Mr. Olin J. Wimberly* and *Mr. Marion Erwin* for the appellant and appellee Speer.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

1. On these appeals, the first question is, whether there is any such incorporated institution in the District of Columbia as "Georgetown University" or "University of Georgetown," capable of taking the devises and bequests under the will, for the uses and purposes designated by the testator. Or, if not, whether the institution of learning in said District incorporated by the name of The President and Directors of Georgetown College is the institution intended by the testator to take under the misnomer of Georgetown University. While it is conceded that there are several institutions of learning in this District which have been incorporated as universities, it is not averred or pretended that there is any such institution as "Georgetown University" in existence or operation in this District. Indeed, it is expressly alleged in the bill as a fact that there is no such incorporated institution as Georgetown University, though Georgetown College is frequently referred to and spoken of as Georgetown University, notwithstanding it has never been incorporated as such. It is simply a popular designation applied to the college. It is alleged in the bill that the defendants, Whitney and others, under the name of The President and Directors of Georgetown College, in this District, claim to be the beneficiaries entitled to the legacies mentioned in the will of the testator as for Georgetown University. It is not attempted to be shown that there was or is in existence in this District any such incorporated institution of learning as "Georgetown University" separate from and independent of Georgetown College.

We are referred to the Maryland acts of 1792, chap. 55, and of 1797, chap. 40; the first of which was passed to incorporate the Roman Catholic clergymen of that State, and to enable them, in their corporate capacity, to acquire and hold and enjoy certain property intended for their use and benefit; and the second of which acts, being supplemental, was passed to confer upon the persons composing the corporation of the Roman Catholic clergymen certain powers with respect to property, and to authorize the pre-existing corporation created under the act of 1792, chap.

55, in behalf of the College of Georgetown (for the first time referred to) to receive donations from persons charitably disposed. The College of Georgetown seems to have been a school established at Georgetown by the incorporated body of clergymen, but those acts of Maryland did not create or confer any corporate powers upon the school as such. It was simply a school established by the Jesuits, without corporate powers or franchises.

We are also referred to the act of Congress of March 1, 1815, chap. 70 [6 Stat. at L. 152], entitled "An Act Concerning the College of Georgetown, in the District of Columbia." That act does not profess to be an act of incorporation of the college; but it conferred authority upon the president and directors of the College of Georgetown to exercise certain special franchises and faculties for the admission of students to academical honors, "to any degree in the faculties, arts, sciences, and liberal professions, to which persons are usually admitted in other colleges or institutions of the United States; and to issue, in an appropriate form, the diplomas or certificates which may be requisite to testify the admission to such degree." This is all that was provided for by that act. It deals with the college as an existing institution, but not with an incorporated college.

Nor did the decretal of the Sacred Congregation of the Propagation of the Faith, issued by the authority of the Pope, in 1833, appearing in the record, have any effect or operation whatever in clothing the college with corporate powers and franchises; nor did it invest the college with the attributes of a university. It appears to have been intended as a spiritual encouragement to the study of theology; it could have had no other effect or operation whatever, even if intended to confer academic faculties upon the college. Such faculties could only be conferred upon the college by act of Congress, at the time of the issue of the decretal.

In the view we have of this case, the acts of Maryland of 1792, chap. 55, and the act of 1797, chap. 40; and the act of Congress of 1815, chap. 70, to which we have been referred, have no other bearing or materiality upon the case than to show the origin and

growth of Georgetown College, and to identify the early foundation of the school with the President and Directors of Georgetown College, as that institution was fully and completely incorporated by the act of Congress of June 10, 1844 (6 Stat. at L. p. 912, chap. 41), entitled "An Act to Incorporate Georgetown College, in the District of Columbia." That act is as follows:

Section 1. That there be erected in Georgetown, in the District of Columbia, a college for the instruction of youth in the liberal arts and sciences, the name, style, and title of which shall be "The President and Directors of Georgetown College."

Sec. 2. That James Ryder, Thomas Lilly, Samuel Barber, James Curley, and Anthony Rey, be, and they are hereby, declared, to be a body politic and corporate, with perpetual succession in deed or in law, to all intents and purposes whatsoever, by the name, style, and title of "The President and Directors of Georgetown College," by which name and title they, and their successors, shall be competent, at law and in equity, to take to themselves and their successors, for the use of said college, any estate whatever, in any messuages, etc., goods, chattels, and other effects, etc., by gift, bequest, devise, etc., and the same to grant, etc., for the use of said college in such manner, etc., and to receive the same, their rents etc., and apply the same for the proper use and benefit of the said college; and by the same name to sue and be sued, implead and be impleaded, in any court of law or equity, in all manner of suits, actions, and proceedings whatever, and generally by and in the same name, to do and transact all and every the business touching or concerning the premises, etc.

Sec. 3. That the said corporation shall adopt a common seal, under and by which all deeds, diplomas, and acts of the said college or corporation shall pass and be authenticated, and the same seal at their pleasure to break and alter, or devise a new one.

Sec. 4. That no misnomer of the said corporation shall defeat or annul any donation, gift, grant, devise, or bequest to or from the said corporation.

Sec. 5. That said corporation shall not employ its funds or income, or any part thereof, in banking, or for any purpose or object other than those expressed in the 1st section of this act; and nothing in said act shall be construed to prevent Congress from altering, amending, or .repealing the same.

By this act the college was fully incorporated and given all the powers and franchises usually conferred upon colleges instituted for instruction in the higher branches of education.    Some years before the date of the will of the testator there were added to the college departments of medicine and of law, and those departments have been in active operation ever since.

If there had been in Georgetown, or even in the District of Columbia, an educational institution other than Georgetown College, of a name or title to which the descriptive terms "Georgetown University" could reasonably apply, a serious question of identity might arise.    But there is no other institution that has such title or any such corporate name, as would justify the making of a claim under the will; and Georgetown College is the only institution that has made claim of the devise and bequests made to or for Georgetown University.    It is alleged in the bill that because of such claim the persons who occupy the position of the president and directors of Georgetown College are made parties defendant, in order that the claim of that college might be adjudicated by the court.    They have answered the bill, and while disclaiming any mere personal interest in the subject-matter, they make and insist upon the claim and right of the college to the devise and bequests to Georgetown University.    In so doing we think they are well justified.

Under the circumstances of this case, and upon the proof produced on behalf of the president and directors of the college, we entertain no doubt whatever of the intention of the testator, and that the devise and bequests made by the terms of the will to Georgetown University were intended for Georgetown College; and that no other institution was within his contemplation in respect to such devise and bequests.    And such being the case, the question arises whether such misnomer or misdescription of the

corporation intended to take is of such a character as to defeat or annul the devise and bequests intended to and for the president and directors of Georgetown College. We think not. The question after all is one of intention, and when the intention is made clear, if the person or object is under no legal disability to take, the intention of the testator will be carried into effective operation. In this case, by the terms of the act of incorporation of the college, it is declared that no misnomer of the said corporation shall defeat or annul any bequest or devise made to said corporation. But, apart from this statutory declaration, the general principle of law fully embraces the case, and saves the validity of the devise and bequests to Georgetown College.

It is very true, as a general rule, that corporations must take and grant by their corporate name. Without a name they could not perform their corporate functions; and a name is so indispensable a part of the constitution of a corporation that, if none be expressly given, one may be assumed by implication. A misnomer in a grant by statute, or by a devise, to a corporation, does not avoid the grant, though the right name of the corporation be not used, provided the corporation really intended be made apparent. The general rule upon the subject, as a result of the cases, is summed up by Chancellor Kent in these brief terms: "The general rule to be collected from the cases is that a variation from the precise name of the corporation, when the true name is necessarily to be collected from the instrument or is shown by proper averments, will not invalidate a grant by or to a corporation, or a contract with it, and the modern cases show an increased liberality on this subject." 2 Kent, Com. 292.

And without adverting to this subject again, we may say that the principle just stated fully applies to and relieves from objection, upon the ground of misnomer, the bequests in favor of St. Vincent's and St. Joseph's Catholic Orphan Asylums, in the city of Washington, as described in the will; the use of the word "Catholic" in the bequests, but not used in the proper corporate name, in no manner invalidating the bequests to those institutions.

2. The next objection taken to the validity of the devise and

bequests to the Georgetown University, assuming the same to be intended for Georgetown College, is that they were intended as a devise and bequests to and for the support, use, and benefit of a religious sect, order, and denomination, and to a public teacher of the gospel as such, and that the gift and devise were not made at least one calendar month prior to the death of the testator, as required by § 457, D. C. Rev. Stat.; and are therefore void.

This objection clearly has no foundation in any fair construction of the terms of § 34 of the Maryland Declaration of Rights upon which it is based.   The bequests in question are not to any minister, public teacher, or preacher of the gospel as such, or to any religious sect, order, or denomination, or to or for the support, use, or benefit of, or in trust for, any minister, public teacher, or preacher of the gospel as such, or any religious sect, order, or denomination.   The fact that the college is or may be under the administrative control of a religious order, known as the Order of Jesus, does not bring the institution within the prohibition of the Declaration of Rights.   The college is not a religious institution intended for the tuition and propagation of a particular doctrine and creed of religious belief, to the exclusion of all other creeds and beliefs, but is an institution of learning for the admission and education of students of all denominations of religious faith.   The act of incorporation of the college does not limit the exercise of the corporate powers conferred to the promotion of any particular religious creed or denomination; but the college is open to all alike.   For the limitations of the powers and objects of the college, we must look to the charter granted by Congress, and not elsewhere.

The objection urged would seem to be fully answered by the decision of the Supreme Court of the United States, in the case of *Bradfield* v. *Roberts,* 175 U. S. 296, 44 L. ed. 169, 20 Sup. Ct. Rep. 121.   That was a case of an appropriation by Congress for the erection of hospital buildings, and a part of which, under contract, was about to be applied for the erection of a building at Providence Hospital to be used as part of that institution, which was under the auspices and control of an order of sisterhood of

the Roman Catholic Church.   It was alleged and objected that such application of the congressional appropriation was in violation of that provision of the Constitution of the United States which declares that "Congress shall make no law respecting the establishment of religion."   The application was for an injunction, and this court held, on appeal, that there was no ground for an injunction; and, on appeal to the Supreme Court of the United States, that decision was affirmed.   The Supreme Court, in the course of its opinion, said:

"Assuming that the hospital [Providence Hospital] is a private eleemosynary corporation, the fact that its members * * * are members of a monastic order or sisterhood of the Roman Catholic Church, and the further fact that the hospital is conducted under the auspices of said church, are wholly immaterial, as is also the allegation regarding the title to its property.   The statute provides as to its property, and makes no provision for its being held by anyone other than itself.   The facts above stated do not in the least change the legal character of the hospital, or make a religious corporation out of a purely secular one, as constituted by the law of its being.   Whether the individuals who compose the corporation under its charter happen to be all Roman Catholics, or all Methodists, or Presbyterians, or Unitarians, or members of any other religious organization, or of no organization at all, is of not the slightest consequence with reference to the law of its incorporation; nor can the individual beliefs upon religious matters of the various incorporators be inquired into.   Nor is it material that the hospital may be conducted under the auspices of the Roman Catholic Church.   To be conducted under the auspices is to be conducted under the influence or patronage of that church.   The meaning of the allegation is that the church exercises great, and perhaps controlling, influence over the management of the hospital.   It must, however, be managed pursuant to the law of its being.   That the influence of any particular church may be powerful over the members of a nonsectarian and secular corporation, incorporated for a certain defined purpose, and with clearly stated powers, is surely not sufficient to convert such a

corporation into a religious or sectarian body. That fact does not alter the legal character of the corporation which is incorporated under an act of Congress, and its powers, duties, and character are to be solely measured by the charter under which it alone has any legal existence. There is no allegation that its hospital work is confined to members of that church, or that in its management the hospital has been conducted so as to violate its charter in the smallest degree. It is simply the case of a secular corporation being managed by people who hold to the doctrines of the Roman Catholic Church, but who, nevertheless, are managing the corporation according to the law under which it exists. The charter itself does not limit the exercise of its corporate powers to the members of any particular religious denomination, but, on the contrary, those powers are to be exercised in favor of anyone seeking the ministrations of that kind of an institution. All that can be said of the corporation itself is that it has been incorporated by an act of Congress, and for its legal powers and duties that act must be exclusively referred to. * * * The act of Congress, however, shows there is nothing sectarian in the corporation, and 'the specific and limited object of its creation' is the opening and keeping a hospital * * * for the care of such sick and invalid persons."

We have made this extended extract from the opinion of the Supreme Court because it seems to be entirely conclusive upon the particular question raised in this case. And that decision of the Supreme Court applies as well to the objection taken to the bequests in favor of St. Vincent's Orphan Asylum and the trustees of St. Joseph's Male Orphan Asylum, as to the bequests in favor of the Georgetown College. It is unnecessary, therefore, to further discuss this question of the alleged religious character of the legatees.

3. We come next to the disposition of that part of the estate of the testator which he acquired under his father's will. This part of his estate is all devised and bequeathed to his trustees named; and by the first clause under this general devise and bequest the trustees are directed to pay and see to the application of $10,000 to Georgetown College, misnamed Georgetown Uni-

versity, to be used and held as an endowment for the prosecution of research in colonial history of Maryland and the District of Columbia, and the gathering and preserving archives and papers having relation thereto, and to be known as the James Ethelbert Morgan fund. This latter direction to the trustees is alleged to be void, because there is no chartered power in any institution which could take under this bequest, that authorizes it to prosecute such research and obtain and preserve the archives relating thereto. As we have seen, the act of incorporation of Georgetown College, of 1844, confers corporate power upon the institution for the instruction of youth in the liberal arts and sciences, and also clothes the corporation with power to take any estate whatsoever, in any lands, etc., or goods, chattels, moneys, and other effects, by gift, bequest, devise, etc., and the same to grant, convey or assign, and to place out on interest for the use of said college, and to apply the same. The cultivation of historical research would seem to be a part of a liberal education, such as should be encouraged by a college intended to confer degrees upon students in acquiring a liberal education in the arts and sciences. We have many learned discourses upon the philosophy of history, and the term "science" is of a very large meaning in an educational point of view. Acknowledged truths and laws, in any department of mind or matter, digested and arranged into a system; a profound or complete knowledge of all acknowledged truths relating to any subject-matter. This is the definition of science, and it would seem to be comprehensive enough to embrace an inquiry into a matter of history, as a means of arriving at and establishing the truths of history,— truth being the foundation of science. But even if it be thought that research in matters of history be not within the letter of the charter of the college, still, it is within the purview of the act, and germane to the objects and purposes of the incorporation. As said by the Supreme Court in *Jones* v. *Habersham,* 107 U. S. 189, 27 L. ed. 407: "A corporation may hold and execute a trust for charitable objects in accord with, or tending to promote, the purposes of its creation, although such as it might not, by its charter or by general laws, have authority itself to establish or to

spend its corporate funds for. A city, for instance, may take a devise in trust to maintain a college, an orphan school, or an asylum. *Vidal* v. *Philadelphia,* 2 How. 127, 11 L. ed. 205; *Mc-Donogh* v. *Murdoch,* 15 How. 367, 14 L. ed. 732; *Perin* v. *Carey,* 24 How. 465, 16 L. ed. 701. There is some ground for holding that the objects of a historical society would be promoted by administering a devise and bequest to maintain for the public instruction and benefit a house containing a collection of books, documents, and works of art, with other such books and works to be selected by the officers of the society and purchased out of the surplus income; and that the purposes of the trust are, in the words of Mr. Justice Story in *Vidal* v. *Philadelphia,* 'germane' to the objects of the incorporation,' and 'relate to matters which will promote, and aid, and perfect those objects.' "

The other objections urged against the validity of this bequest we do not think are well founded. There is no want of certainty or definiteness in the nature of the research directed, or its object. Of course, the *modus operandi* of administering and applying the fund must depend, to a large extent, upon the agencies employed by the college authorities; and it will be the duty of the trustees that the court may appoint to exercise supervision over the administration of the fund. It does not follow, however, that this power of supervision was intended to be confined to the trustees named in the will; from the very nature of the power of such supervision it is required to be exercised by a succession of trustees. The death or resignation of the trustees named in the will before the conditions arose upon which the fund could be received and paid over to the college did not defeat or annul the bequest. Where the intention of the testator is clear, as it is in this case, the question of the wisdom or want of wisdom in making the bequest is not for the court to decide. But in this case it is not difficult to perceive that the result of careful research into matters of interesting and important history, and the gathering together of the archives and documents relating thereto, would be the subject of great public interest, and particularly valuable to the future historians of the country. And that being so, there can be no reason for questioning the va-

lidity of the bequest upon the ground that there is no charitable utility to be derived from its execution; nor is there any such uncertainty in the manner of execution as to render the bequest void.

The authorities would seem to be plain upon this subject, and to fully meet the objections taken to the validity of this particular bequest. It is settled that, if a testator creates a trust for a particular charitable purpose, as for a school, hospital, almshouse, church, or other institution, and points out all the duties, so that there is certainty in the purposes and objects of the charity, and appoints no trustee, or if the trustees appointed fail for any reason, courts will appoint other trustees; for such is the plain intention of the testator; and it is a maxim of courts of equity never to allow a certain and valid trust to fail for want of a trustee. In such case, the courts say that there is no ground to suppose that the discretion of any particular trustee has anything to do with the essence of the gift. *Inglis* v. *Sailor's Snug Harbor,* 3 Pet. 99, 7 L. ed. 617; 2 Perry, Tr. 731. Other authorities might be cited to the same effect. If the power given to the first trustees is a personal trust and confidence, the court should not appoint other trustees to exercise that power, contrary to the intention of the testator; but the court ought to act upon liberal principles of construction in finding such intention. *Loring* v. *Marsh,* 6 Wall. 337, 18 L. ed. 802; *Atty. Gen.* v. *Gladstone,* 13 Sim. 7.

4. We come next to the bequest of a sum not to exceed $5,000, to be expended under the personal supervision of the trustees appointed by the testator, in the purchase and erection of a chime of bells, the erection of an altar, or memorial window, etc., for some one Catholic church, \* \* \* said church to be in the District of Columbia, and to be designated by his mother by her last will or otherwise; and, if she fail so to do, the testator directed his trustees to carry out said trust, as a memorial of his mother, and donate the same to some Catholic church, "giving a preference, if there be one, built by the Jesuits."

This bequest, we think is void. It has several elements of uncertainty in it which no rule of construction can obviate or re-

move.   In the first place, no particular church is named, or so described as to be identified with certainty.   Moreover, the mother has died without naming any particular church to receive the memorial bequests.   These particulars in which there is uncertainty are sufficient to render the bequest void, without reference to the other circumstances relied on for declaring the bequest invalid.

5. But the alternative bequest of this sum of $5,000 stands upon a different footing.   Apprehending that the first bequest of this $5,000 might be declared void, the testator, in that event, says:   "I direct said sum, not exceeding $5,000, shall be equal-ly divided between St. Vincent's and St. Joseph's Catholic Orphan Asylums, in the city of Washington."   These asylums are incorporated institutions; the first by the name of St. Vincent's Orphan Asylum, and the second by the name of The Trustees of St. Joseph's Male Orphan Asylum, in the city of Washington.   There is no serious question made as to the identity of these incorporated asylums, in the city of Washing-ton, which have been made defendants and have answered the bill, as being those described in the testator's will.   The slight variance in their corporate names as given in the will from their proper corporate names as stated in the bill and answers is wholly immaterial.   There is nothing to mislead in regard to their identity.   But the objection taken to the validity of the bequest to these asylums, and which has been seriously urged, is that there is such uncertainty in the amount bequeathed as to render it impossible to execute the bequests.   But in this con-tention we do not concur.   The bequest is of the said sum, not exceeding $5,000, to be equally divided between the two insti-tutions.   There is nothing else to be done than to make the division and pay over the bequest, and that is of $5,000, to be divided into two equal parts.   It is argued that the trustees might, in the exercise of their discretion, make division of a less sum than $5,000.   But of what sum could they make such division, keeping in mind the intention of the testator?   The words "not exceeding" would seem to have been used without any special intention of qualifying or limiting the sum be-

queathed and directed to be equally divided; these latter terms, we think, plainly indicating the intention of the testator to give the half of the $5,000 to each of the two institutions. To hold otherwise would necessitate the holding of the entire bequest void. This would be justified upon no established principle of construction. The intention of the testator should be given effect if possible. As said by the Supreme Court of the United States, in *Inglis* v. *Sailor's Snug Harbor,* 3 Pet. 117, 7 L. ed. 624, "a devise is never construed absolutely void for uncertainty, but from necessity; if it be possible to reduce it to certainty it is good.    *    *    *    That the general intent must be carried into effect, even if it is at the expense of the particular intent." The general intent in this bequest was, manifestly, to give the $5,000, and hence he named no other sum,—a thing we must suppose he would have done, if he had intended a less sum to be equally divided between the two charitable objects.

We think it clear, therefore, there is no ground for declaring this bequest void.

6. The next question relates to the bequest to found a scholarship, and which directs that a sufficient sum, not to exceed $3,000, the income of which to be applied to maintain a scholarship in the study of medicine, preferably in Georgetown University (College), otherwise in some medical college in this District, to be known as the E. Carroll Morgan scholarship.

This bequest is alleged to be void, because of the uncertain amount directed to be expended, and because of the discretion reposed in the trustees in the selection of the particular college in connection with which the scholarship should be maintained. We think, however, the bequest is good, and that it can be executed under the direction of the court. There is no foundation for the objection that the bequest is invalid for the want of certainty as to the amount directed to be expended. The scholarship is directed to be instituted and maintained from the income of an amount not to exceed $3,000. If the object in view should require the full amount of $3,000 to be expended, that amount will be applied; but, if the object can be accomplished for less, only so much as may be required will be applied. There is,

therefore, no such uncertainty as to the amount to be applied for the object in view as will affect the validity of the bequest. And as to the question of discretion to be exercised by the trustees in selecting the college with which to connect the scholarship, there is no real difficulty. In the first place, the testator himself has made his own selection by expressing his preference for Georgetown College; but if, for any reason, that selection cannot be made available, then some other medical college can be selected by his trustees. In authorizing such selection there is nothing in the terms of the authority conferred to show that it was the intention of the testator to repose special personal trust and confidence in the trustees in the performance of the duty; and therefore to preclude the exercise of the discretion by any succeeding trustees. The authorities would seem to have settled the principle that where an estate is given to trustees to be applied to charity generally, or to such charitable purposes and institutions as they, in their discretion, shall judge best, and the trustees die before the testator, or make no selection of the objects or application of the fund, or decline to act, the court will be governed by the intent of the testator, to be gathered from the interpretation of the whole instrument, in determining the question whether it can appoint new trustees to exercise the power and discretion given to the trustees named in the will; and if, upon such construction, it be found that new trustees may reasonably perform such duty, they will be appointed with direction to proceed in the execution of the bequest. *Atty. Gen.* v. *Gleg,* 1 Atk. 356; *Atty. Gen.* v. *Fletcher,* 5 L. J. Ch. N. S. 75; 2 Perry, Tr. § 721. We can perceive no good reason why the bequest for the institution and maintenance of a scholarship in the name of the testator himself may not be executed by trustees appointed by the court.

7. The only other bequest impeached for invalidity is that by which the trustees are directed to pay and see to the application of the sum of $5,000 to form a fund to be known as the E. Carroll Morgan fund or scholarship, to be applied "as I (the testator) may hereafter verbally indicate to my trustees, or, if I fail, as my trustees with the advice of proper persons may de-

cide, to the maintenance of a scientific department, or the foun-
dation and the application of the income to a scholarship in the
classical department, in the University of Georgetown," etc.

This bequest or direction has in it so much uncertainty and
want of completeness, that it would seem to be impossible to
execute it as directed, by any fair construction. The testator re-
served to himself the right to control the trustees in the appli-
cation of the fund by verbal direction. There was no such verbal
direction given, and the alternative provided for—that of the
trustees deciding with the advice of proper persons—is equally
indefinite and uncertain, as it would be impossible for the court
to determine who would be the proper persons to advise the
trustees.

This bequest or direction falls within the principle of a large
class of cases, wherein it has been held that the bequests were
void for uncertainty and incompleteness. As, for instance,
where the bequest was to such persons in trust as shall be named
thereafter, and none are named; or where a fund is given for
such charitable uses as shall be directed by a codicil or note in
writing, and there are no such papers to be found; or where a
trust is created in a will for a school to be thereafter named, and
none is named; or to such uses as the executor shall appoint, and
the executor's appointment is revoked, or the executor renounces
probate or refuses to appoint, or where a bequest is made to trus-
tees who decline to accept and exercise the discretion, and there
is no authority in the successors to exercise the power; or where
the sums or charities are wholly uncertain and indefinite,—in
all such cases, and cases depending upon similar reasons, the
courts in this country are powerless to interfere to establish the
charities, appoint trustees, or decree a scheme by which the fund
can be expended. The cases illustrative of this particular
principle will be found collated in § 729 of 2 Perry, Tr. p. 359.

It follows, therefore, that this bequest and direction is void,
because of the want of certainty, and the absence of the con-
ditions prescribed upon which the bequest could be executed.
And, such being the result upon the construction of the bequest,

the fund must fall into and form part of the residue of the testator's estate, and pass under the residuary clause of his will.

Upon review of the whole case, it results that the decree of the court below must be reversed, and that the cause be remanded that an account be taken and such other proceedings be had therein as may conform to the foregoing opinion. The costs of the several appeals to be paid out of the residuary fund.

*Decree reversed and cause remanded.*

An appeal to the Supreme Court of the United States was prayed by the appellees and allowed December 6, 1904.