# DINWIDDIE v. METZGER.

WILLS; EQUITY; TRUSTS; HUSBAND AND WIFE.

Where a testatrix left her real and personal estate to her husband for life, with remainder over to some charity in memory of her parents, and directed that if she should not determine the nature of the charity

Note.—For uncertainty as to purpose or beneficiaries of charity, see notes in 14 L.R.A.(N.S.) 84, 116, and 37 L.R.A.(N.S.) 1001, 1012.

during her life, her executors should do so, and further directed the executors to purchase an outstanding one-half interest in certain real estate in which she owned the other one-half interest, such real estate to go to the same charity,—it was *held* that the will created no trust which a court of equity could enforce; that the intestacy of the testatrix occurred as of the date of her death, and not as of the date of the death of her husband; that the one-half interest in the real estate which the executor had purchased was to be considered as personal estate, and not real estate; and that it, together with the other personal estate of the decedent, went to the husband absolutely, and on his death was distributable to his next of kin, while the heirs at law of the testatrix took the real estate by descent.

No. 2905.   Submitted March 21, 1916.   Decided May 29, 1916.

HEARING on an appeal by the plaintiffs from a decree of the Supreme Court of the District of Columbia, sitting as an equity court, in a suit for the construction of a will.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

Mary C. Metzger died in this District on April 21, 1912, leaving her husband, Millard Metzger, and two sisters, Ella S. Todd and Lulu A. Burton, and Florence C. Dinwiddie and Marion L. Dinwiddie, daughters of a deceased sister, as her heirs at law and next of kin. She left a will, which provided, after some immaterial bequests, as follows: "To my husband, Millard Metzger, I give the rents and revenues derived from the property known as 208 Tenth street, N. W., square 350 s–lot 13, in the city of Washington, District of Columbia. I direct my executors to sell any of my estate, both real and personal, that to them may seem best,—and to invest and reinvest, and to keep the same invested at all times. The property known as 925 Massachusetts avenue, N. W. square 370 lot 3, in the city of Washington, District of Columbia, I wish set aside from my other estate, and direct my executors to purchase from Florence C. Dinwiddie and Marion L. Dinwiddie their one-half interest, the other one-half interest already belonging to

me, and to donate the same to some charity, in memory of my parents, Oliver P. and Cecilia J. Donn, and to be known as the Donn Memorial, and the balance or remainder of the revenues derived from my estate, both real and personal (after paying the bequests aforesaid mentioned), are to be applied to the maintenance of the Donn Memorial, and at the death of my husband, Millard Metzger, all of my estate, both real and personal, shall go to the maintenance of the Donn Memorial,—not having fully determined the character of the charity, to which I give my estate in memory of my parents Oliver P. and Cecilia J. Donn,—should I not do so during my lifetime,—I leave the selection to my husband, Millard Metzger, and Marion L. Dinwiddie, the executors of this my last will and testament, and no bond shall be required of them."

The husband, Millard Metzger, qualified as executor, Marion L. Dinwiddie renouncing her right to act. The testatrix having failed during her lifetime to determine the character of the charity intended to be founded by her, the power of appointment devolved upon her husband. He likewise failed to determine the charity by deed, will, or otherwise. As directed in the will, the executor purchased the one-half interest in the Massachusetts avenue property.

A bill in equity was filed in the supreme court of the District of Columbia by Florence C. Dinwiddie and Marion L. Dinwiddie against the executors of the estate of Millard Metzger, and named as additional defendants all persons entitled to make claim against said estate as heirs or next of kin either of Mary C. Metzger or of her husband. It was conceded by counsel, and so held by the court, that since the husband, as trustee or donee of the power of appointment under the will, failed to carry out the express directions of the testatrix, and the objects of the trust being uncertain and indefinite, a court of equity is without power to carry into effect such a charitable trust. It was therefore decreed that, except as to the minor bequests not here involved and the devise of the rents and revenues derived from sublot 13, in square 350, known as 208 Tenth street, North-

west, held to be only a life estate, Mary C. Metzger "is to be regarded and held as having died intestate, leaving her real estate to descend to her heirs, and her personal property to devolve by operation of law upon Millard Metzger, her husband, who survived her." The court also decreed that the one-half interest in the Massachusetts avenue property purchased by Millard Metzger as directed in the will "is to be regarded as a part of the personal estate of the said Mary C. Metzger, and as having devolved by operation of law upon her said husband, Millard Metzger." It was also decreed that the rents and profits from the real estate in the hands of the executors of Millard Metzger, amounting to $1,358.90, be paid to the heirs and next of kin of Mary C. Metzger.

In other words, the court held that Mary C. Metzger died intestate, and that the real estate of which she died seised vested in appellants as her heirs at law and next of kin, and that her personal estate, including the one-half interest in the Massachusetts avenue property, descended to her husband. This holding is made to accord with section 1160, D. C. Code [31 Stat. at L. 1375, chap. 854], which provides that "on the death of any married woman owning real or personal estate and intestate thereof, her said estate shall be administered on as if she had been unmarried, and in the appointment of her administrator her husband shall be entitled to be preferred. After payment of her debts, her said personal estate shall be the property of her husband."

From the decree, the heirs at law and next of kin of Mary C. Metzger—Florence C. Dinwiddie and Marion L. Dinwiddie, plaintiffs below, and Ella S. Todd and Lulu A. Burton, two of the defendants below—have appealed.

*Mr. A. A. Hoehling, Jr., Mr. Stanton C. Peelle,* and *Mr. C. F. R. Ogilby,* for the appellants:

1. Since the trust created by Mrs. Metzger did not fail until her surviving husband died without having appointed the ob-

jects of the trust, the intestacy did not arise until his death, and took effect only from that time.   Her personal estate is therefore distributable to her next of kin, and not to the next of kin of her husband.   *Arnold* v. *Brown,* 24 Pick. 89 ; *Blount* v. *Walker,* 31 S. C. 13; *Brown* v. *Higgs,* 8 Ves. Jr. 561; *Chamberlain* v. *Taylor,* 105 N. Y. 185; *Cruwys* v. *Coleman,* 9 Ves. Jr. 319; *Davoue* v. *Fanning,* 2 Johns. Ch. 252, 269; *Dowley* v. *Atty. Gen.* 2 Eq. Cas. Abr. 195; *Fitzgibbon* v. *Scanlon,* 1 Dow. 269; *Gray's Estate,* 147 Pa. 67; *Harding* v. *Glyn,* 1 Atk. 469; *Hayes* v. *Hall,* 188 Mass. 510; *Haxtun* v. *Corse,* 2 Barb. Ch. 506; *Holeridge* v. *Gillespie,* 2 Johns. Ch. 30; *Joy* v. *Aspinwall,* 18 Jur. 284; *Lenox* v. *Notrebe,* 15 Fed. Cas. 8246c.; *Michoud* v. *Girod,* 4 How. 503; Perry, Trusts, Sec. 427; Perry, Trusts, Sec. 433; *Ringo* v. *Binns,* 10 Pet. 269; D. C. Code Section 1160; *Tuohy* v. *Hanlon,* 18 App. D. C. 225, 234.

2. Since Mrs. Metzger, by her will, directed her executors to purchase the outstanding one-half interest in No. 925 Massachusetts avenue, the portion of her personal estate applied for such purpose should be construed as having been converted into real estate, and so as having descended to her heirs at law. *Ackroyd* v. *Smithson,* 1 Bro. C. C. 503; *Bender* v. *Luckenbach,* 162 Pa. 18; *Hawley* v. *James,* 5 Paige, 318; *Leiper's Appeal,* 35 Pa. 420; *Walter* v. *Maunde,* 19 Ves. Jr. 424.

3. The testatrix, by apt words, devised and bequeathed her entire estate, both real and personal (with certain unimportant exceptions), to her executors, in trust, with power to sell any thereof, both real and personal, "and to invest and reinvest and to keep the same invested at all times."   And it is not without significance that there is no residuary clause in the will which, of itself, indicates no apprehension on the part of testatrix that she had left any part of her estate undisposed of.   *Blount* v. *Walker,* 31 S. C. 13.

Under the authorities, the testamentary provisions operated to vest the legal estate in the executors, *as trustees,* even though they were not technically so described.   *Rathbone* v. *Hamilton,* 4 App. D. C. 475; *Griffith* v. *Stewart,* 31 App. D. C. 29;

affirmed in 217 U. S. 323; *Wilson* v. *Snow,* 35 App. D. C. 562; affirmed in 228 U. S. 217; *Doe ex dem. Poor* v. *Considine,* 6 Wall. 458; 2 Jarman, Wills, 156; *Clarke* v. *Boorman,* 18 Wall. 493.

*Mr. J. J. Darlington,* for the appellees Metzger and the National Savings & Trust Company, Executors, Baxter and others, in his brief cited:

*Ackroyd* v. *Smithson,* 1 Bro. C. C. 503; *Amphlett* v. *Parke,* 2 Rus. & M. 24, 1 Lead Cas. Eq. 1819; *Bender* v. *Luckenbach,* 162 Pa. 18; *Blount* v. *Walker,* 31 S. C. 13; *Bogert* v. *Hertell,* 4 Hill, 492; *Brown* v. *Higgs,* 8 Ves. Jr. 561; *Brown* v. *Higgs,* 4 Ves. Jr. 708; *Cogan* v. *Stevens,* 1 Beav. 482; *Cole* v. *Wade,* 16 Ves. Jr. 27; *Cruse* v. *Barley,* 3 P. Wms. 20; *Cruwys* v. *Coleman,* 9 Ves. Jr. 319; *Curtiss* v. *Wormald,* 10 Ch. Div. 172; *DeVaughn* v. *DeVaughn,* 3 App. D. C. 50, 58; *Doyley* v. *Attorney General,* 2 Eq. Cas. Abr. 195; *Durour* v. *Mateux,* 1 Ves. 320; *Fairman* v. *Beal,* 14 Ill. 245–6; *Fischer* v. *Wagner,* 21 L.R.A.(N.S.) 121–123; *Fitch* v. *Weber,* 6 Hare, 145; *Frazier* v. *Frazier,* 2 Leigh, 642, 645, 649; *Freeman* v. *Okey,* 56 N. C. 473, 477; *Halliday* v. *Hudson,* 3 Ves. Jr. 210; *Harding* v. *Glyn,* 1 Atk. 469; *Holt* v. *Hogan,* 58 N. C. 82, 88; *Kirk* v. *Kirk,* 26 N. J. Eq. 35; *Leiper's Appeal,* 35 Pa. 420; *Long* v. *Gloyd,* 25 W. L. R. 50; *Loring* v. *Arnold,* 15 R. I. 428; *Mallabar* v. *Mallabar,* For. 79; *Morris* v. *Owen,* 2 Call. 520; *Pate* v. *Barrett,* 2 Dana, 426; *Pollock* v. *Trust Co.* 157 U. S. 479, 580; *Reynolds* v. *Godlee,* John, 536; *Rizer* v. *Perry,* 58 Md. 112, 117; *Roy* v. *Munroe,* 47 N. J. Eq. 356; *Stonebreaker's Will,* 49 Md. 72, 104; *Trippe* v. *Frazier,* 4 H. & J. 446; *Walker* v. *Evans,* 29 W. L. R. 348; *Walter* v. *Maunde,* 19 Ves. 424; Jarman, Wills, 6th Am. ed., ** 586, 589; Kent, Com. 319, 536; Sugden, Powers, chap. 3, sec. 1; *Buchanan* v. *Macfarland,* 31 App. D. C. 19; *Wetmore* v. *Karrick,* 205 U. S. 141, 155; *Cohens* v. *Virginia,* 6 Wheat. 264, 399–400; *Harriman* v. *Northern Securities Co.* 197 U. S. 244, 291; *Chew*

v. *Hyman*, 7 Fed. 14; citing *Taylor* v. *Benham*, 5 How. 269; and Story, Eq. Jur. Section 1070; *Carver* v. *Jackson*, 4 Pet. 1, 92; *Wilson* v. *Snow*, 35 App. D. C. 568; *Hopping* v. *Gray*, 82 N. J. Eq. 502; *Guyer* v. *Maynard*, 6 G. & J. 420; *Robinson* v. *Allison*, 74 Ala. 257; *Re L'Hommedien*, 138 Fed. 606, affirmed by the circuit court of appeals in 146 Fed. 708; *Jameson* v. *Smith*, 4 Bibb, 307; *Rogers* v. *Marker*, 12 Heisk. 648; *Lockwood* v. *Stradley*, 1 Del. Ch. 298; *Lambert* v. *Harvey*, 100 Ill. 342; *Cohen* v. *Jemison*, 68 Miss. 517, and citations; *Cady* v. *Lincoln*, 100 Miss. 765.

*Mr. Victor H. Wallace* for the appellee Percy Metzger, who also appeared in proper person.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

But two questions are here involved, which are stated in the brief of appellants, as follows:

"First. Is the intestacy of Mary C. Metzger to be considered as occurring as of the date of her death, or is it to be considered as arising thereafter, upon the death of her husband, and as taking effect from that time, when the trust created by her will failed?

"Second. Is the one-half interest in 925 Massachusetts avenue, directed by the will to be purchased, to be considered as real or personal property?"

From the language of the will, Mrs. Metzger seems to have intended to acquire title to the Massachusetts avenue property, and establish the Donn Memorial therein. The residue of her estate was to be used for its maintenance. The power of appointment conferred upon the executor was a mere naked power depending upon his discretion. There is no chancery power in this country which could have compelled him to make the selection, nor has any trust survived which can be executed through the aid of a court of chancery. Equity will not enforce the execution of a mere naked power. 1 Story, Eq. Jur. sec. 169.

It follows that there being no trust which equity can enforce, and no provision having been made in the will for the contingency which has arisen, the power here delegated cannot be held to be a trust belonging to executorship. "Where there is nothing more than a power of appointment conferred by the testator, there is nothing on which a trust, on general principles, can be fastened. The power given is a mere agency of the will, which may or may not be exercised at the discretion of the individual. And if there be no act on his part, the property never having passed out of the testator, it necessarily remains as a part of his estate." *Fontain* v. *Ravenel,* 17 How. 369, 387, 15 L. ed. 80, 87.

In England, upon failure of the person designated in the will to make appointment, the prerogative power of the King, as *parens patriæ,* is invoked through the chancellor to give effect to the charity, but no such power has been extended to the chancery courts in this country. The portion of the estate here involved remained in the testatrix. No title whatever passed to the executor. As to this property, it is as if no will had been made. In the event of the failure of the intended charity, due to the neglect of the executor to make the appointment, there is nothing in the will to indicate an intention on the part of the testatrix to make a different distribution of the estate than the law would make if there were no will. As was said in *Fairman* v. *Beal,* 14 Ill. 245: "Nothing passes under the clause conferring the power, until the power itself is exercised. Sugden, Powers, chap. 3, ¶ 1; 4 Kent, Com. 319 and 536."

This principle is amply supported by the authorities. In *Frazier* v. *Frazier,* 2 Leigh, 642, 645, 649, where John Frazier left by will the management of his estate to his brother James, with power of sale and distribution "among the legatees of my personal estate, according to their merit or deserts, as he may see at a future day what time may turn up." The court held the expression, "legatees of my personal estate," to mean next of kin. James survived his brother, but failed to make the appointment as directed in the will, concerning which the court

said: "John Frazier died intestate with respect to that fund; and his surviving brother [James] was entitled to a moiety of it, as a part of his general assets, and the four children of his deceased brother Samuel, to the other moiety; two of whom having since died, one of them intestate and unmarried, that moiety was equally distributable between the surviving brother and the representatives of his deceased brother and sister, respectively."

Counsel for appellants rely chiefly upon the case of *Blount* v. *Walker,* 31 S. C. 13, 9 S. E. 804. In that case, one Sarah J. Harris bequeathed to J. H. Walker and his heirs the use of her estate in trust for her daughter, Mrs. Blount, for life and then to her issue, or, failing issue, to such persons as she might appoint. Mrs. Blount died without issue, and attempted by will to make the appointment, but the will, because of illegal execution, was declared void. Mrs. Blount having failed to make appointment as provided in the Harris will, the issue arose as to whether the heirs at law of Mrs. Harris at the time of her death or those who constituted her heirs at law at the time of the death of Mrs. Blount should take. A majority of the court took the latter view.

We think, however, that the present case is clearly distinguishable from that case. There, all the judges were in agreement that, if the testatrix be held to have died intestate, the estate would pass as of the date of her death. In this case, it is conceded that Mrs. Metzger died intestate,—the only question being when the intestacy attached. There, a trust was created; here, a mere agency existed. This distinction is of the greatest importance. In the South Carolina case, the majority of the court held that the testatrix died testate, and that the fee to the estate passed to the trustee and his heirs, who were vested with the power to sell and convey the property of the testatrix in fee simple. This power the court held inconsistent with a mere estate in the trustee for the life of the daughter, Mrs. Blount. It follows, under this holding, that when Mrs. Blount died without legally exercising the power vested in her, the fee

remained in the trustee, giving rise to a resulting trust in favor of the heirs at law of Mrs. Harris as of the date when it arose. On this point the court said: "This is because the grant or devise of a fee conditional passes the whole estate to the tenant in fee, leaving nothing in the grantor or devisor which can be the subject of devise or inheritance, and hence it is settled that, upon the termination of such an estate, it goes to those who can bring themselves into the class of heirs of the person creating the estate at the time when the estate terminates, and not to those who were heirs at the time of the death of such person. *Adams* v. *Chaplin,* 1 Hill, Eq. 265; *Deas* v. *Horry,* 2 Hill, Eq. 244; *Pearse* v. *Killian,* M'Mull. Eq. 231."

The fact that Millard Metzger under the will was permitted during his lifetime to enjoy a life estate in the rents and revenues derived from the Tenth street property, without power to dispose of the property otherwise than as expressly provided in the will, does not change the situation. The reversion, after the life estate, was left in the disposal of the husband under the power of appointment, and where one is devised a life estate, with power to dispose of the reversion, only the life estate passes. If the power of disposition of the reversion remains unexecuted, the property reverts to the legal heirs of the testator to be distributed as by law provided. *Pate* v. *Barrett,* 2 Dana, 426; *Freeman* v. *Okey,* 56 N. C. (3 Jones, Eq.) 473, 477. In the *Freeman Case* the court said: "The bequest in the present case is in express terms to the wife for life, with an absolute power of disposition, which confines the interest which the wife took in the slaves, to a life estate, and leaves them still a part of her husband's estate, as she died without exercising her power."

In the present case, aside from the life estate in the Tenth street property and the personal estate, no title passed to the husband. Without the charity, there was intestacy as to the real estate. Of course, the title to the personal estate passed to the husband as executor, for the purposes of administration, and the payment of debts and the small bequests as to which

the will of the testatrix was carried out. Indeed, as it turned out, the balance of the personal estate belonged to the husband under section 1160 of the Code [31 Stat. at L. 1375, chap. 854]. The court in the *Blount Case,* considering the alternative of the proposition there presented, which meets the present case, said: "If, however, the trustee took an estate only for the life of Mrs. Blount, then, as the ulterior limitations after the death of the life tenant have failed by reason of her dying without issue, and without executing the power of appointment, there is a case of intestacy, and the estate, subject to the life interest of Mrs. Blount, descended immediately upon the death of the testatrix to her heirs, and as Mrs. Blount was then her sole heir, became vested in her."

This is in line with the decision in *Holt* v. *Hogan,* 58 N. C. (5 Jones, Eq.) 82, where the testator gave half of his personal property and certain of his real estate to his widow for life, "with the privilege of disposing of the same by will, or otherwise, amongst our children at her death." The failure of the wife to make appointment was held to create intestacy as of the date of the death of the testator, and the widow, though dead, was entitled to her distributive share "of this undisposed fund, for the life estate given to her by the will does not exclude her from claiming her part of what is not embraced by the will."

There is nothing in the will before us to indicate any intention on the part of the testatrix, should the charity fail, to make any other disposition of the portion of her estate here involved than that which the law would have made had she died without a will. The presence of such an intention is essential before the court will intervene to set aside the rights of the heirs at law to take under the statutes of distribution. *Ackroyd* v. *Smithson,* 1 Bro. Ch. 503, 3 P. Wms. 22, 7 Eng. Rul. Cas. 8.

We come now to the second proposition urged by counsel for appellants,—namely, that the purchase by the executor of the one-half interest in the Massachusetts avenue property operated as a conversion of personal property into real estate, thereby depriving the next of kin of Millard Metzger of so much of the

personal estate as was exchanged for real estate. The error in which counsel have fallen arises from treating the estate conveyed to the intended charity as a trust. By reason of the failure of the executor to make the appointment, no trust was created in him. No resulting trust, therefore, arose,—the power delegated to the executor being a mere agency which was not carried out.

There being no trust, it follows that Mrs. Metzger died intestate as to the real and personal estate donated to the charity until the charity should come into being. The charity having failed, no title to that portion of her estate passed; hence, there could be no lawful conversion of any portion of it, real or personal, that could affect those entitled by law to take. The rule is well stated by Judge Alvey in *Rizer* v. *Perry,* 58 Md. 112, 118, as follows: "The leading idea in all such cases is that where the testator directs real estate to be sold for special purposes, as in this case, if those purposes, or any portion of them, become incapable of taking effect, the heirs at law will take, for there is an end of the disposition, where there is an end of the purposes for which it was made; therefore, where land is directed to be sold and converted into money, and the whole or part is given for a purpose, which fails by reason of illegality, the whole or part which on this account remains undisposed of, results to the heir at law; as, for instance, where money to arise from the sale of land is given to a charity, and the gift is void according to the statute of mortmain, or is otherwise limited so that the bequest is void, the heir is entitled."

In the case at bar, no intent is expressed to make any disposition of the property other than as a gift to the intended charity. There is nothing from which the court can infer an intent to deprive the husband of the personal estate in favor of the next of kin. Indeed, the clear intent was to deprive both of any interest in the estate by a gift of the entire residue to the intended charity. Of course, the rule is the same whether the conversion be of realty into personalty, or of personalty into realty. "The same principle, it is now settled, applies in the

converse case of money being directed to be laid out in land, which is then devised for a limited estate only; the fund *ultra* that interest, though eventually turned into land, goes as personal estate undisposed of to the residuary legatee or next of kin of the testator, on the ground that the will operates to convert the fund so far only as it disposes of it." Jarman, Wills, 6th Am. ed. 613, ** 586, 589.

It is contended by Percy Metzger, one of the appellees, that by the terms of the will Millard Metzger became vested with an absolute title in all of the real estate of which he could only be devested by the creation of the intended charity. Since no trust was created in the executor, and no title, legal or equitable, passed to him of the property donated to the charity, the contention is without merit.

The decree is affirmed, with costs.           *Affirmed.*