15249

MEDICAL SOC. OF SOUTH CAROLINA *ET AL.* v. SOUTH CAROLINA NATIONAL BANK OF CHARLESTON *ET AL.*

(14 S. E. (2d), 577)

*Mr. H. L. Erckmann* and *Messrs Mitchell & Horlbeck,* for appellants,

*Messrs. Hagood, Rivers & Young,* for respondents,

April 29, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE STUKES.

This case was in this. Court before and report of it will be found under the title of *Ex parte Carolina Art Association (Medical Society of South Carolina, et al. v. Huger et al.)*, at 185 S. C., 137, 193 S. E., 642. The question there determined was solely upon the right of Carolina Art Association to intervene, which was answered in the negative. It may not be successfully contended that that decision of this Court bound the parties to the action or the Circuit Court on any other issue or as to what issues were made by the pleadings. This observation anticipates an adverse answer to appellants' second question in which they take the position that by the pleadings the plaintiffs were confined to the single issue of the failure of the attempted trust for lack of sufficient funds to support it; more will be later said as to this.

The questioned codicil to the will of Miss Ross in addition to appointing a self-perpetuating board of trustees to operate the "Ross Memorial" Museum, provided as follows:

"I have in my residence, No. 1 Meeting Street, in the City of Charleston, S. C., a collection of silver, enamels, porcelain, jade, bronzes, carpets, rugs, pictures, engravings,

books, laces, kashmir shawls, and other articles of interest, some of which are heirlooms, and others, which I have collected during my years of travel. Believing that this collection, which I shall hereafter, for convenience, refer to as my art collection, will be a matter of public interest, it is my desire that the same shall be maintained intact and that suitable provision may be made for the care and exhibition thereof. To that end I direct my Executors or trustees, as soon as conveniently may be after my decease, to cause to be formed under the laws of the State of South Carolina a Corporation, which shall be known as the Trustees of The Ross Memorial * * *.

"I give, devise and bequeath to said Corporation my family homestead, now known as Nos. 1 and 3 Meeting Street at the Northwest corner of South Battery, in the City of Charleston, South Carolina, together with the land and buildings appurtenant thereto and all the contents thereof (except the chamber furniture, bedding, linens, and table service, such as china, glass, cutlery and silver plate), and together also with any other articles forming part of my art collection heretofore referred to, which may happen not to be contained in said premises at the time of my death. In Trust however to keep and preserve the same as a Public Museum to be known as the Ross Memorial, in which my said art collection shall be permanently kept and cared for, to be open for exhibition to the public on such terms and upon such reasonable regulations as the Board of Trustees of said Corporation may from time to time prescribe * * *. And my art collection shall be kept intact and not added to, nor shall any other collection be housed or displayed in said buildings, nor shall my art collection be removed therefrom except in case of temporary removal made necessary by reason of hazard from fire or other cause. It is my wish that the homestead shall be retained pretty much as it was in my lifetime, except for the addition which I have hereinafter directed to be made, and that the said property shall be maintained for all time as a Museum for the care and

exhibition of my art collection as a memorial to my two deceased brothers, Robert Flemming Ross, M.D., and Lieut. James Alexander Ross, and I direct my Executors to have prepared and erected in a conspicuous place in the building, a suitable tablet to that effect."

Thereafter in the codicil was the devise of certain real estate to her executors, the income from which was directed to be used for the maintenance and support of the "Ross Memorial," including repairs, with the surplus of such income to The Medical Society of South Carolina for the use of Roper Hospital, with power of sale and reinvestment. It was established at one of the references that as of about March, 1938, the real estate so devised was of the value of $216,400.00 and securities and cash were in hand to the amount of about $47,000.00.

The testatrix died in 1922 and her will and codicils were admitted to probate on September 25th of that year and thereafter Alfred Huger, Esq., distinguished member of the Charleston bar, became the sole executor, and it was against him as such that this action was commenced in September, 1934. After his death pending the action the two banks now named as defendants in his stead were appointed as administrators and trustees of the will.

In the complaint it was alleged that the museum and memorial had never been opened and, upon information and belief, that there was and would be insufficient income from the property to operate the memorial museum, on which account the devise and bequest for that purpose have become ineffectual and lapsed. In paragraphs numbered 18 and 19 of the complaint it was further and separately alleged that the devise and bequest relating to the museum have become ineffectual and have failed and the property therein involved has become a part of the residuary estate of which the plaintiffs are the beneficiaries under the will and codicils. The prayer is general that the provisions for the museum be adjudged to have failed and become ineffectual and that the

property involved be declared a part of the residuary estate, etc.

An order of reference to the Master provided that he only take and report the testimony. Several references were held upon widely separated dates, the delay being at least in part due to the suspension of references during the pendency of the unsuccessful attempt of the Carolina Art Association to intervene, referred to above. The record indicates that plaintiffs' counsel were diligent in their effort to hasten the proceeding.

At the first reference held by the Master on December 3, 1935, an expert in antiques of Philadelphia was placed upon the stand by plaintiffs and testified that he had made a sufficient inspection of the articles of Miss Ross which she directed should constitute the contents of the proposed museum and that only about two or three per cent. of such articles are of museum value in which the public would have interest and that the exhibition of the articles would reflect upon the high cultural reputation of the City of Charleston, and the taste, judgment and knowledge of its people. To this and other similar testimony the defendants objected upon grounds including that it was not relevant or responsive to any issue made by the pleadings and by their exceptions and their second "question involved," referred to above, clearly present this legal issue.

It has been noted that objection was made to this testimony at the first reference in December, 1935. At the next, held on January 30, 1937, the director of the Charleston Museum, prepared for such position by study in most of the outstanding museums of Europe and the eastern United States, testified to the same effect over defendants' objection made upon the same ground, that it would be of no use to the cultural reputation of Charleston and that it would not be proper to exhibit the Ross collection to students as a museum. However, this witness placed the percentage of the articles usable as museum pieces at over ten. Incidentally, it should be said that this witness declined plaintiffs' request

to testify and that he attended only under subpoena and counsel's threat of a jail sentence for contempt should he continue to refuse.

At the last-mentioned reference, in January, 1937, the director of the Carolina Art Association, which operates the Gibbes Art Gallery in Charleston, also testified over the same objection of defendants' counsel, that the matter was not an issue under the pleadings, that from his inspection of a representative cross-section and a reading of an inventory of the articles which would be exhibited under the terms of the will that such exhibition would detract from the cultural reputation of Charleston and that it would be detrimental to the taste of students to view it and would cause spectators confusion. He further testified to the effect that a great majority of the articles, in his opinion, were souvenirs purchased by the testatrix during travels and of no museum value, that many were not originals and that the whole collection if exhibited would constitute a "museum of bad taste." This witness had served as director of the Gallery since December, 1931, and began museum work in 1918 and meanwhile had studied in most of the museums of the East and had also studied abroad upon a fellowship of the General Education Board and in three months had visited one hundred and thirty museums.

Other references were held on December 16, 1937, March 10, 1938, June 2, 1938, January 17, 1940, and finally on April 2, 1940. While it will not be attempted to summarize all of the testimony taken, it may be said that it established that after the banks were appointed administrators, pending the action, and their trust officers took charge of the property, it was producing sufficient income to operate the "museum" as contemplated by the testatrix with even a surplus, and that in fact the trustees had opened it and had employed a curator, caretaker, garden supervisor and secretary, at a total annual cost of about $4,300.00, to which annual taxes of over $2,100.00 constituted an added expense. The secretary testified "with reservations" that about one-

·half the articles were on display and that when cases were obtained the other articles would be shown and on that account another employee would be obtained; that there had been no record of the number of people who had viewed the exhibits, forty-five to fifty had signed a register, but more than that had attended.

The Philadelphia expert testified again after a visit to the open museum that in his opinion not over ten per cent. of the articles were on exhibition and that he still believed that only two or three per cent. of the whole number of articles is of museum value and that only a few of such are on display, in fact that the exhibit is not a museum at all. The director of the Charleston Museum likewise testified again after visiting the exhibit and repeated his opinion that only from ten to fifteen per cent. of the whole number of articles was of museum value, that the exhibition is not a museum and that the public is misled when it is invited there as to a museum and if invited into the house as a representative Charleston home.

The defendants without reservation of record produced as their witness the president of the Society for the Preservation of Old Dwellings of Charleston who testified, over plaintiffs' objection, that the Ross house dated from 1840 to 1850 and that the preservation of it as a type of architecture of that period would be a public interest and benefit, particularly to tourists, and that he had been through the house, found it interesting and believed others would, and that it would be of value to the community.

The secretary of the board also testified for the defendants concerning the opening of the "museum" on December 5, 1939, and concerning the articles ·on exhibition, of their beauty and interest, and that the many people who have seen the exhibit have been pleased and greatly admired most of the articles.

Upon the testimony, partially briefly stated above, the Circuit Judge held that the questioned devise of the testatrix was void as a violation of the rule against perpetuities as

she had failed to come within the exception of a charitable trust because it was established by the weight of the evidence that the vast majority of the articles to be exhibited are not museum pieces and that the public would not receive benefits from the exhibition of them, necessary to make the trust a charitable one, and that the property involved should be distributed to plaintiffs under the residuary clause of the will. He pointed out incidentally that the plaintiffs are unquestionably public charities.

The Court determined defendants' contention that the issue as to whether the proposed museum was a charitable trust was not made by the pleadings adversely to them upon the generalization that pleadings must be liberally construed under the Code, that only ultimate facts need be alleged, and under the authority of *Langston v. Fiske-Carter Construction Co.,* 180 S. C., 113, 185 S. E., 62. We do not think that in this there was error as is charged here by the defendants, now appellants. Not only have we the canon of liberal construction referred to, but we have the provision of Section 490 of the Code of Procedure to the effect that a variance between proof and pleading shall not be deemed material unless a party shall be thereby misled to his prejudice and such shall be established to the satisfaction of the Court, which may then order an amendment. This beneficent provision is well elucidated in the *Langston case, supra,* and such need not be repeated. In the litigation here the defendants were put upon notice by the testimony at the first reference in 1935 of plaintiffs' contention and the hearings continued intermittently until 1940, and in fact some of defendants' testimony was directed in reply, as above narrated. It cannot be said that the defendants were misled by the variance between proof and pleadings, and their exceptions thereabout are overruled.

The only other question stated by appellants in their printed brief as being involved in the appeal is numbered 1 and challenges the correctness of the circuit decree in holding that the proposed "Ross Memorial" is not a public char-

ity and the attempted provision therefor is invalid. For this position appellants heavily rely upon the decision in *Jones v. Habersham*, 107 U. S., 174, 2 S. Ct., 336, 346, 27 L. Ed., 401, and they have called attention to the interesting fact that the report of that case must have been before counsel who prepared the will of Miss Ross as some of the provisions are identical.

In that case, decided in 1882, the Supreme Court of the United States upheld as valid the provision of the will of Miss Mary Telfair whereby she gave to the Georgia Historical Society her family residence in the City of Savannah together with all her "books, papers, documents, pictures, statuary, and works of art, or having relation to art or science, and all the furniture * * * to keep and preserve same as a public edifice for a library and academy of arts and sciences, in which the books, pictures, and works of art herein bequeathed, and such others as may be purchased out of the income, rents, and profits of the bequest hereinafter made for that purpose, shall be permanently kept and cared for, to be open for the use of the public * * * ." There was a further provision that there should be placed at the 'entrance a marble marker of the name of the institution, Telfair Academy of Arts and Sciences, and there was a bequest for the support of the institution and for the addition to the library and works of art and science of one thousand railroad shares, of which the income only should be used.

There are several points of important difference between that case and this. In the first place there was no attack there as to the worth of the objects to be exhibited and no testimony that the collection was in fact not a "museum." There, there was a library to be added to, as was the collection of objects of art and science. Here, in striking contrast, we have offered a static collection of little or no value to the public, all articles must be exhibited and never added to. The principal difficulty in the operation of the Telfair library and museum, which was overcome by the decision of the Court, seems to have been the alleged lack of power of the Georgia

Historical Society to take a bequest with an income so large as that provided by the will.

The appellants also cite *Richardson v. Essex Institute,* 208 Mass., 311, 94 N. E., 262, 21 Ann. Cas., 1158, wherein the Court upheld the gift of a family memorial to consist of the homestead including a collection of antiques, together with the attached garden for a park, with provision for addition to the latter, and a free public school of botany, with provision for an instructor and lectures, with income supplied therefor. As we read the decision, the Court upheld the gift as a charitable trust because of the educational purpose and public park and, in fact, held that if the will merely provided for the maintenance of the house and its contents as a kind of public museum there would be question as to whether it constituted a public charity, but it was satisfied by the provision for the school of botany and the public park. We are impressed with the observation of the Court to the effect that there can be no rule laid down for all such cases as to what is educational or of other benefit so as to constitute a public charity and, in effect, that each case must stand upon its own facts and be governed thereby.

We are not unmindful of the sympathy with which a Court of equity views the effort of a testator to create a public charitable trust and the length to which a Court will go in order to sustain it. Of these principles a good example and leading case is *Shields, Attorney General, v. Jolly,* 1 Rich. Eq., 99, 42 Am. Dec., 349. See, also, *Porcher v. Capplemann,* 187 S. C., 491, 198 S. E., 8. However, the circuit decree approved by this Court in the much-cited decision of *Dye v. Beaver Creek Church,* 48 S. C., 444, 26 S. E., 717, 718, 59 Am. St. Rep., 724, contains this succinct statement of an obvious governing principle: "The object and effect of every charitable bequest is to confer a public benefit, else it would be no charity." And of course when the issue is raised it is the duty of the Court to ascertain and determine what is a charity. In this controversy the lower Court has decided upon ample, competent

testimony that the carrying out of the expressed wishes of the testatrix will not confer a public benefit and is, therefore, not charity; in fact the weight of the evidence is to the effect that a detriment to the public would result. We agree with this finding and conclusion. It may be said in passing that the desire of Miss Ross to perpetuate her family name has been accomplished by another provision of her will, a bequest to Roper Hospital of her city; and the property here directly involved will in plaintiffs' hands be "Ross-Henry Memorial" funds.

Appellants have called attention to Section 9053 of Volume 3 of the Code of 1932, which, however, was first enacted in 1925 and they frankly state that it is not binding in this action because the codicil here under attack was probated before the passage of the law, but they contend that the latter is declaratory of the public policy of the State. Careful consideration of the terms of the statute, however, discloses its inapplicability to this controversy even if it were applicable in time.

Appellants' Exception XIX attempts to present the point that in any event of this case the plaintiffs are not entitled to recover because the codicil here held invalid was not a complete revocation of certain other provisions of the will, but this contention was not presented to the Court below and on that account cannot be properly made here.

All exceptions have been considered and are overruled, and the judgment below affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.