NOEL et al. v. OLDS et al.

ROLLINS COLLEGE v. NOEL et al.

OLDS et al. v. SAME.

UNIVERSITY OF NORTH CAROLINA v. SAME.

Nos. 8352–8355.

United States Court of Appeals for the District of Columbia.

Decided Oct. 11, 1943.

582

Mr. Austin W. Scott, of Cambridge, Mass., of the Bar of the Supreme Judicial Court of Massachusetts, pro hac vice, by special leave of court, with whom Messrs. Arthur J. Phelan and James C. Rogers, both of Washington, D. C., were on the brief, for appellants in No. 8352.

Mr. William D. Donnelly, of Washington, D. C., with whom Messrs. Homer Cummings, William Stanley, and J. Edward Burroughs, Jr., all of Washington, D. C., were on the brief, for appellant in No. 8353.

Mr. John E. Larson, of Washington, D. C., with whom Messrs. Frederic D. McKenney, John S. Flannery, G. Bowdoin Craighill, and Llewellyn C. Thomas, all of Washington, D. C., were on the brief, for appellants in No. 8354.

Mr. O. Max Gardner, of Washington, D. C., with whom Mr. Thomas J. Beddow, of Washington, D.C., was on the brief, for appellant in No. 8355. Mr. Ward E. Lattin, of Washington, D. C., also entered an appearance for appellant in No. 8355.

Mr. John E. Larson, of Washington, D. C., with whom Messrs. Frederic D. McKenney, John S. Flannery, G. Bowdoin Craighill, and Llewellyn C. Thomas, all of Washington, D. C., were on the brief, for Edson B. Olds, Jr., and American Security and Trust Company, Executors and Trustees, appellees in No. 8352.

Mr. William D. Donnelly, of Washington, D. C., with whom Messrs. Homer Cummings and J. Edward Burroughs, Jr., both of Washington, D. C., were on the brief, for appellee Rollins College in No. 8352.

Mr. Austin W. Scott, of Cambridge, Mass., of the Bar of the Supreme Judicial Court of Massachusetts, pro hac vice, by special leave of court, with whom Messrs. Arthur J. Phelan and James C. Rogers, both of Washington, D. C., were on the brief, for appellees Noel, Brown, Landis and Acklen in Nos. 8353, 8354 and 8355.

Mr. John E. Larson, of Washington, D. C., with whom Messrs. Frederic D. McKenney, John S. Flannery, G. Bowdoin Craighill, and Llewellyn C. Thomas, all of Washington, D. C., were on the brief, for Edson B. Olds, Jr., and American Security and Trust Company, Executors and Trustees, appellees in No. 8355.

Mr. Walter M. Bastian, of Washington, D. C., filed a brief on behalf of appellee Pauline Lockett Kaiser in Nos. 8352, 8353, 8354 and 8355.

Mr. James Craig Peacock, of Washington, D. C., entered an appearance for appellees Frank Kaiser and Pauline Hyatt Kaiser Everett in No. 8352.

Before GRONER, Chief Justice, and MILLER, Associate Justice, and EICHER, Chief Justice of the District Court of the United States for the District of Columbia, sitting by designation.

MILLER, Associate Justice.

William Hayes Ackland was a citizen of the United States, domiciled in the District of Columbia. He owned property having a value well over a million dollars; including certain manuscripts and art objects which he valued highly. On May 4, 1936, Ackland executed his last will and testament; in which, among other things, he provided for the erection of a memorial building in the form of a gallery or museum, to house his treasures, upon the campus of Duke University in North Carolina, or, in the event permission could not be obtained therefor, then, upon the campus of the University of North Carolina, or, as a

third alternative, upon the campus of Rollins College in Florida. He provided, also, for the perpetual maintenance and upkeep of the building and for continuing acquisition of additional objects of art. Thereafter, in December, 1936, the testator addressed letters to Duke University, the University of North Carolina and Rollins College, substantially in the following language: "I am the owner of some valuable paintings and statuary and have thought of building and endowing a gallery in connection with a southern university. Before making my will, I should like to know whether such a gift would be acceptable and under what conditions the gift would be received? The style of architecture is to be in keeping with other buildings and the site I would expect the University to furnish. In regard to other particulars— which do not occur to me at the moment— I should be glad to be informed through the authorities." Interviews and letters followed between the testator and President Few of Duke University, and between the testator and President Holt of Rollins College. President Few gave the testator oral and written assurances that the building contemplated by the testator would be constructed upon the campus of Duke University and urged that he change his will of May 4, 1936, to designate Duke University, alone, as the site for the same. He tendered to the testator the services of a member of the Duke Endowment Board to prepare a new will.[1] He furnished to the testator the services of the architect of Duke University, who drew plans for the proposed gallery or museum. He visited the testator in Washington and invited him to visit Duke University. He expressed a heartfelt common interest with the testator in the "cause of art in the South." While engaged in these blandishments, Few attempted—for what reason does not clearly appear—to persuade the testator to make either an inter vivos gift or a direct bequest

[1] In a letter of April 19, 1938, Few said: "My suggestion is that you bequeath directly to Duke University what you have in mind to come to the art museum; indicate the securities that would enable the University to build the museum for you at once and designate that anything that might be left over from this or from other terms in your will shall all be devoted to the purpose of your museum; make your personal bequests direct, or if you prefer set up a trust for your niece. There would also be the possibility of bequeathing your estate to Duke University with designations as to how the private gifts are to be distributed. Whatever you give to Duke University would be tax free, though your estate might be taxed for the gifts that go to individuals even though they went through this University. When I get a copy of the old will, which I understand you were to send me, and when I hear from Mr. Olds, then Judge Perkins and I can without undue delay prepare a form to submit to you and to Mr. Olds."

to Duke University instead of providing for administration of his estate in trust as he had done in his 1936 will.[2] Upon counseling with his advisers Ackland declined to make a gift or bequest of his estate in the manner suggested; but he did execute a new will on November 10, 1938, designating the Duke University campus as the site for the memorial gallery or museum. He died in February, 1940; his will was admitted to probate in June, 1940; in September, 1941, Duke University, by resolution of its Executive Committee, declined: " * * * all of the provisions of said Will with respect to said institution, including all the benefits, burdens and responsibilities thereof, * *." In the meantime, in August, 1941, a complaint was filed in the District Court seeking a construction of the will of testator and other relief. Plaintiffs in this suit are the next of kin of testator. They named as defendants the executors and trustees under the will of testator, Duke University, Rollins College, and other beneficiaries named in the will. Duke University defaulted and responsive pleadings were filed by the other defendants. Plaintiffs moved for judgment on the pleadings.

The University of North Carolina moved for leave to intervene and filed a proposed answer, counterclaim and cross-claim. The trial court confirmed the clerk's entries of default of Duke University; upheld the legacies to individuals, and held them severable from the charitable trust; upheld a trust in favor of Rollins College to provide an annual prize; held that the trust for the construction and maintenance of a gallery or museum was a valid charitable trust, but that Duke University having declined all the benefits, burdens and responsibilities of the will, the trust had become impossible of performance and hence had failed; denied the motion of the University of North Carolina for leave to intervene, but without prejudice to its right to renew the motion, in event the judgment of the court should be reversed on appeal. It ordered distribution accordingly. Four appeals from the judgment were consolidated for hearing in this court.

■■■ We agree with the trial court that the will created a valid charitable trust. As the Supreme Court has said: "Charitable uses are favorites with courts of equity. The construction of all instruments where

---

[2] "Dear Mr. Ackland: The autumn has been so mild and I am assuming you are still in Washington, and I am addressing you there. I have been thinking a good deal about the whole situation as it seemed to me to exist at my last visit to Washington.

"You have been good enough to talk with me about a memorial in the form of an art museum, and you have indicated a preference for Duke as the place for it. I have all along expressed for the University and for myself the wish to cooperate so far as possible with your purpose. In the light of all this I feel that it is my duty to call your attention to some decisions that you yourself will have to make or else in the course of time circumstances will make them for you.

"*If you can provide funds that will be actually available by one means or another within the next year or two, we can carry through this project for you in admirable shape.* Even if you should decide to put into the building only $250,000, the amount you first mentioned to me, we could go forward with the building making the necessary reductions in it, or if it could be put up within the next year or two while our quarries are open we might be able to get the building for that amount without reducing the size. We have three rather extensive building projects on now, one in process of construction and two others to begin in the spring.

"As I hope I made plain to you in Washington, if you will put securities to the amount of $250,000 or $300,000 *in a form that our governing bodies can accept, we will build the William Hayes Ackland Art Museum now and pay you six per cent annually on the amount put into the building.* And this without regard to the decisions you may make concerning other things that were talked about in Washington. If, on the other hand, you leave the whole matter as it was when I was in Washington, I shall not feel hopeful of the outcome either as to an adequate memorial for you or a real service to the cause of art in the South, which you and I have alike at heart. I feel that I owe it to you to say this much to you. *In any case, I am sure that neither you nor others will misunderstand my motive.*

"Interesting things are going on here this year. I wish you would stop by on the way to Florida. If not, and if you should care to talk further with me I shall be glad to come to Washington at your convenience. Anyhow, I am still hoping that you may find it convenient to pay us another visit going to or returning from Florida.

"With sentiments of personal esteem and genuine good will, I am

"Cordially yours, (signed) W. P. Few."
[Italics supplied ]

they are concerned is liberal in their behalf."[3] The proposition has been many times repeated by this and other courts.[4] The trust created by testator in the present case fully satisfies the requirement that the object and effect of a true charitable bequest is to confer a public benefit.[5]

Appellants Noel, Brown, et al., in No. 8352, contend that the trust should fail, on the theory that in creating it testator's major purpose was the erection of a memorial apse and "an elaborate sarcophagus." They rely upon cases which are concerned with bequests for perpetual maintenance of burial lots[6] or which, they say, were for memorials trying to masquerade as charities.[7] But this contention has no application in the present situation. The placing of the gallery or museum on a university campus; specification that it should be constructed according to plans submitted by Duke University, which included galleries, classrooms and instructors' offices; provision of funds for continuing purchase of art objects and for enlargement of the building; all combined to give the trust a character which comes clearly within the scope of trusts for charitable purposes.[8] Many of the best known charitable trusts have carried the names of their creators[9] and memorials erected under such trusts have frequently included, as incidental thereto, apses, mausoleums and recumbent statues. Such vanities, if they may properly be so characterized,[10] are not sufficient to defeat the major purpose of such trusts, or prevent their recognition as true charities.[11] As Scott states the proposition: "Where a trust is created for educational, religious or other charitable purpos-

---

[3] Ould v. Washington Hospital for Foundlings, 95 U.S. 303, 313, 24 L.Ed. 450.

[4] See, for example, Darcey v. O'Brien, 62 App.D.C. 151, 152, 65 F.2d 599, 600, cert. denied, 290 U.S. 658, 54 S.Ct. 73, 78 L.Ed. 570; International Reform Federation v. District Unemployment Compensation Board, 76 U.S.App.D.C. 282, 284, 283, 131 F.2d 337, 339, 343, cert. denied, 317 U.S. 693, 63 S.Ct. 324, 87 L.Ed. —; Bauer v. Myers, 8 Cir., 244 F. 902, 909; John v. Smith, 9 Cir., 102 F. 218, 220; Kibbe v. City of Rochester, D.C., W.D. N.Y., 57 F.2d 542, 549, and cases there cited; St. Louis Union Trust Co. v. Burnet, 8 Cir., 59 F.2d 922; Summers v. Chicago Title & Trust Co., 335 Ill. 564, 567, 167 N.E. 777, 778; Franklin v. Hastings, 253 Ill. 46, 50, 97 N.E. 265, 267, Ann. Cas.1913A, 135.

[5] Hazen v. National Rifle Ass'n, 69 App. D.C. 339, 343, 101 F.2d 432, 436, at note 16, and cases there cited; Medical Soc. of South Carolina v. South Carolina Nat. Bank, 197 S.C. 96, 14 S.E.2d 577.

[6] Iglehart v. Iglehart, 26 App.D.C. 209, 6 Ann.Cas. 732, affirmed 204 U.S. 478, 485, 27 S.Ct. 329, 51 L.Ed. 575.

[7] Medical Soc. of South Carolina v. South Carolina Nat. Bank, 197 S.C. 96, 107, 14 S.E.2d 577, 581.

[8] 2 Restatement, Trusts (1935) § 370; Jones v. Habersham, 107 U.S. 174, 189, 2 S.Ct. 336, 27 L.Ed. 401; Gibson v. Frye Institute, 137 Tenn. 452, 193 S. W. 1059, L.R.A.1917D, 1062 (building for free use of working people with rooms for lectures, library and dance hall); Tarver v. Weaver, 221 Ala. 663, 130 So. 209 (art museum); McLyman ex rel. Rives v. Art Ass'n of Newport, 51 R.I. 273, 154 A. 117 (art museum); Cary Library v. Bliss, 151 Mass. 364, 25 N.E. 92, 7 L.R.A. 765 (public library); Lackland v. Walker, 151 Mo. 210, 52 S.W. 414 (botanical garden, library and museum).

[9] For example, The Rockefeller Foundation, Charles Hayden Foundation, The Duke Endowment, The Julius Rosenwald Fund, The Russell Sage Foundation, Mary Louise Curtis Bok Foundation, Carnegie Endowment for International Peace, The John Simon Guggenheim Memorial Foundation, The A. W. Mellon Educational and Charitable Trust, The Smithsonian Institution, and The Pierpont Morgan Library.

[10] In re Browning's Estate, 165 Misc. 819, 1 N.Y.S.2d 825, 834: "The argument made that the plan of the testator is personal and private in that it is designed to perpetuate his name does not seem to the court to be of any substance. Whether man's desire to perpetuate his name be called vanity or be recognized merely as the aspiration of man to retain post mortem some contact with the world he knew needs no discussion. Deceased has yielded only to an urge which is a human characteristic and which is evidenced in multitudes of public monuments and buildings."

[11] Jones v. Habersham, 107 U.S. 174, 189, 2 S.Ct. 336, 27 L.Ed. 401; Old Colony Trust Co. v. O. M. Fisher Home, Inc., 301 Mass. 1, 8, 16 N.E.2d 10, 14; Massachusetts Institute of Technology v. Attorney General, 235 Mass. 288, 297, 126 N.E. 521, 524; In re Smith's Estate, 181 Pa.St. 109, 37 A. 114; In re Graves' Estate, 242 Ill. 23, 89 N.E. 672, 24 L.R.A.,N. S., 283, 134 Am.St.Rep. 302, 17 Ann.Cas. 137; Haggin v. International Trust Co., 69 Colo. 135, 140, 169 P. 138, 140, L.R.A. 1918B, 710.

es, the mere fact that it is to serve as a memorial to the testator or another does not prevent it from being a charitable trust."[12] Again, the same author says: "It is well settled that the motive of the donor is immaterial. A trust is none the less charitable although the donor was actuated by a desire to glorify himself or by a desire to spite his relatives."[13] We conclude that the paramount, dominant and primary purpose of the testator was to give to charity generally and that his motive or desire to perpetuate his name by the inclusion of an apse and recumbent statue was minor and insignificant compared to the larger purpose.

The issue most contested on argument was whether—Duke University having repented of the blandishments practiced upon William Hayes Ackland during his lifetime and having repudiated the will which he made at the invitation of its president, Few—the trust became impossible of performance and failed as a result of that impossibility. Otherwise stated, the question is whether the doctrine of judicial cy pres is in force in the District of Columbia. Relying upon language which appears in Graff v. Wallace,[14] the District Court held that it is not. That language reads as follows: "In their effort to defeat the will, and meet any suggestion that the income could be applied to charity in a manner different from that specifically pointed out in the will, counsel for appellants earnestly contend that the cy pres doctrine, as understood and applied in England, is not in force in this District. This contention is conceded by counsel for appellees. We deem it unnecessary, therefore, to consider the question for the reason that *the doctrine is not in force in this District,* (Dinwiddie v. Metzger, 45 App.D.C. 310; Dumfries v. Abercrombie, 46 Md. 172; Ould v. Washington Hospital for Foundlings, 95 U.S. 303, 24 L. Ed. 450), and for the further reason that if it were in force it would have no application to this case." [Italics supplied.] Obviously, the italicized words constitute obiter dictum, entirely unnecessary for the decision of the case; hence, they have no effect as indicating the law of the District. Moreover, the dictum is so ambiguously stated, standing alone, as to lack even persuasive force. It was announced, apparently, upon the basis of an agreement between counsel as to the state of the law "as understood and applied in England." When we look to the briefs in the Graff case we find the meaning of the disputed language. There was no agreement between counsel that the doctrine of cy pres was not applicable in the District. On the contrary it was vigorously maintained by one of them that *judicial cy pres* was applicable. The other counsel's argument was directed against the doctrine of *prerogative cy pres,* apparently without understanding of the difference between the two. The argument proceeds as follows: "We regard the case of Dinwiddie v. Metzger, 45 App.D.C. 310, as an express repudiation of the *cy pres* doctrine for this jurisdiction." Then follows a quotation from that case, the material portion of which is as follows: "In England, upon failure of the person designated in the will to make appointment, the prerogative power of the King, as *parens patriæ,* is invoked through the chancellor to give effect to the charity, *but no such power has been extended to the chancery courts in this country.* The portion of the estate here involved remained in the testatrix. No title whatever passed to the executor. As to this property, it is as if no will had been made."[15] [Italics supplied] The quotation speaks for itself. It was written by Justice Van Orsdel who, also, wrote the opinion in the Graff case. It is not in any way concerned with the doctrine of judicial cy pres. It is apparent, then, that on oral argument in the latter case, counsel and court reached an agreement that the doctrine of *prerogative cy pres,* as understood and applied in England, was not applicable in the District. This agreement found its way into the opinion, in the casual dictum above quoted. That the doctrine of *judicial cy pres* is applicable in the District has never been denied. On the contrary its applicability has been recognized in several cases, even though not expressly declared.[16] If the question

[12] 3 Scott, Trusts (1939) § 374.9.

[13] 3 Scott, Trusts (1939) § 368.

[14] 59 App.D.C. 64, 66, 32 F.2d 960, 962, certiorari denied 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629.

[15] Dinwiddie v. Metzger, 45 App.D.C. 310, 317.

[16] Ould v. Washington Hospital for Foundlings, 95 U.S. 303, 24 L.Ed. 450; Colbert v. Speer, 24 App.D.C. 187, 208, affirmed, 200 U.S. 130, 26 S.Ct. 201, 50 L.Ed. 403; Smith v. Gardiner, 36 App. D.C. 485, 487; Washington Loan & Trust Co. v. Hammond, 51 App.D.C. 260, 266, 278 F. 569, 575; Sedgwick v. National Savings & Trust Co., 76 U.S.App.D.C. 177, 130 F.2d 440; Beach v. Gilbert, 77 U.S.App.D.C. 117, 133 F.2d 50.

were still open, there would be no reason to reject, for this jurisdiction, one of the most beneficent doctrines in the law of trusts, a doctrine which, by judicial or legislative pronouncement, is now recognized almost universally throughout the country.[17]

■ As the District of Columbia is subject to plenary legislative control by Congress,[18] the United States, acting through Congress, occupies the position of *parens patriæ*. If Congress should so declare, therefore, prerogative, as well as judicial cy pres could be made operative in this jurisdiction. Analogies based upon decisions from States, which have rejected this power by constitutional limitation, are inapplicable in the District of Columbia.[19] But no more is involved in the present case than application of the doctrine of *judicial cy pres*. In other words, when, as here, only minor features of a trust for. charity become impossible or impracticable of performance and, consequently, when it cannot properly be said that the general scheme or purpose of the testator has failed, then the doctrine of judicial cy pres operates to avoid failure of the charity by sustaining the trust.[20] "The theory is," as stated by Scott, "that although the testator intended that the property should be applied to the particular charitable purpose named by him, yet he had *a more general intentirn* to devote the property to charitable purposes. The settlor would presumably have desired that the property should be applied to purposes *as nearly as may be like the purposes stated* by him rather than that the trust should fail altogether." [21] [Italics supplied]

■ Appellees urge that, conceding ap-plicability of the cy pres doctrine, nevertheless, its application in the present case would distort the purpose of the testator beyond the permissible limits of that doctrine; that at best it is a matter of pure speculation what his intention would have been in the event which actually occurred, contrary to his expectations, after his death. Particularly, it is suggested that his purpose would be distorted if the gallery were constructed upon the campus of some other university; that his revocation of the earlier will in which he had designated alternative donees, shows his final intention to confine his gift to Duke University. We conclude that the contrary clearly appears from the record. As succinctly stated by Scott: "The answer depends upon whether the testator manifested an intention merely to make a gift to the corporation or whether he manifested a more general intention to devote the property to certain charitable purposes." [22] The position of Duke University under the later will was more that of a trustee than the donee of a gift. It was to provide the site of the building. To the extent that the building was to be used for university purposes presumably Duke would be in charge of that use. These functions could be as well or better performed by other universities. But the actual erection of the building and, thereafter, the maintenance and upkeep, not only of the building but of its contents as well, was given to the charge of appellant trustees.[23] The actual beneficiaries of the trust were intended to be students and other members of the public throughout the South, interested in art, who should visit and use the building. These beneficiaries could be as well or better served by other

[17] 2 Bogert, Trusts and Trustees (1935) § 433: "The judicial cy pres power has been accepted generally in the United States as a part of the authority of the court of general equitable jurisdiction. * * * The cases cited under succeeding sections illustrate the existence and extent of the power in a great majority of the states." See also, 2 Restatement, Trusts (1935) § 399; 3 Scott, Trusts (1939) §§ 399 et seq.; 4 Pomeroy, Equity Jurisprudence (5th Ed. 1941) §§ 1027, 1027a.

[18] U.S.Const. Art. I, § 8.

[19] Romney v. United States, 136 U.S. 1, 51–58, 10 S.Ct. 792, 34 L.Ed. 478.

[20] 2 Restatement, Trusts (1935) § 399; Green v. Parker, N.H., 32 A.2d 316.

[21] 3 Scott, Trusts (1939) § 399.

[22] 3 Scott, Trusts (1939) § 397.3.

[23] See Snow v. President and Trustees of Bowdoin College, 133 Me. 195, 200, 201, 175 A. 268, 271: "The Medical School of Maine was a duly organized corporation with power to hold property, and it is significant that this gift was made not to the school but to the President and Trustees of Bowdoin College as trustee. On this corporation was the responsibility of handling this fund, and of expending and using the income for the purposes of the Medical School of Maine. In attempting to determine her intent from the four corners of her will, the particular phrasing which she used has a very potent meaning. *The income is to be used not for the school but for the purposes of the school.* She indicates an interest not so much in the school as in its work." [Italics supplied.]

universities. Perhaps it was for this very reason, because Duke University was made a trustee with limited powers rather than the donee of a gift, that its administrative authorities decided to repudiate the will.

■ Moreover, if there were any doubt as to what the testator would have wished in the event which actually occurred, it is removed by other language which he employed in his will. In Item I, he said: "I urge upon my executors and trustees, hereinafter named, *to carry out as nearly as possible the spirit of my intentions as expressed herein and* as may be expressed to them *by other means."* [Italics supplied] In Item VII(d)8, he provided: "I hereby give to my trustees full and complete discretion in connection with the administration of my trust estate and in carrying out the directions hereinabove contained, especially those in regard to the construction of the building hereinbefore provided for, and I direct that their decision in regard to any matter arising out of their administration shall be binding and conclusive upon all concerned." Here is express language directing the trustees to look to other sources, well known both to testator and the trustees, to guide them in carrying out the spirit of his intentions. Such language would be without meaning if his purpose had been merely to make a gift to Duke University as a single beneficiary. It seems obvious, instead, that here was prevision of the possibility which actually eventuated and provision for the course to be followed by his trustees if it did.

The dominant idea in the mind of the testator was the cause of art in the South. He intended that the seat of his enterprise should be a university, with its well known accompaniment of students, instructors, research and publication facilities, permanence of administration and of educational purposes. The reason for his designation of Duke University has been already indicated. Following the execution of his earlier will, he had been repeatedly importuned to name Duke University, alone, and had been assured that if he did so his purpose of forwarding the cause of art in the South would be carried out. It is apparent that he acted upon that assurance when he executed the later will. His earlier expression of intention, under the circumstances, as shown in the will of 1936, leaves no doubt of what his intention would have been, in the event which actually occurred. Gross distortion of his purpose would result from a holding that because of Duke's repudiation, the trust must fail. To divert his estate to his relatives would violate the first expressed and most positively stated intention of his will.[24]

Jeannette A. Noel et al. filed a motion to dismiss all the appeals except their own. Action upon this motion was postponed until the case could be heard upon its merits. In view of our conclusion that the judgment of the District Court must be reversed the motion is denied and the cause remanded with instructions to proceed in accordance with this opinion.

Several minor contentions remaining have been carefully examined. They are without merit and were correctly decided by the trial court.

Reversed.

---

[24] "Item I: *I am free from any moral obligation to any of my kindred and at liberty, not only according to law, but according to every principle of natural right, to do whatever I choose with my own property. All of my nearest relatives being already provided with the comforts of life and having no claim whatever upon* me, I make no bequest to any of them, except as hereinafter appears. No influence has been brought to bear upon me in the making of this my last will and testament and none of the beneficiaries herein named has any knowledge concerning the manner in which I intend to dispose of my estate." [Italics supplied]